EGBERT H. CHAPMAN, Respondent, v. JOHN F. ENEBERG et al., Appellants.

Kansas City Court of Appeals, June 2, 1902.

1. **Building Contracts:** PRINCIPAL AND SURETIES: PLEADING: CONSTRUCTION. A building contract required the contractor to hold the owner harmless from any mechanic's liens which might be filed by the former's employees. A petition against the sureties of the contractor, on his bond for the faithful performance of his contract, alleged that the plaintiff was compelled to pay a certain sum to prevent the filing of liens which might have been filed, etc. *Held*, the pleading was sufficient since the owner did not have to wait until the liens were filed before he paid, and the words of the contract "which might be filed" meant claims that were lienable and could legally be filed.

2. ———: ———: PAYMENT ON CERTIFICATE: RESERVE FUND. A building contract provided that progress payments to a certain per cent of the work done should be made upon the architect's certificate, and the final payment when the work was completed and accepted by the architect on his certificate. *Held*, the contractor's sureties, when sued by the owner on their bond, could not defeat him because he had paid the reserve payments, since it was done on the certificate of the architect who was to determine when the status of the work demanded a payment, and his certificate issued in good faith bound all the parties.

3. ———: ———: EXTRA WORK: WRITING: CONSTRUCTION. A building contract allowed the owner to change his drawings and specifications. The owner did change them and the additional work required by the change was extra work. The contract by another stipulation prohibited extra work unless it was understood and agreed upon in writing before it was commenced. It was not put in writing. *Held*, while the provision as to extra work was intended to protect the owner, it none the less served to protect the sureties of the contractor, and the failure to put in writing released them.

4. **Trial Practice: MOTION FOR NEW TRIAL: SPECIFIC REASONS: STATUTORY CONSTRUCTION.** Section 640, Revised Statutes 1899, requiring all motions to be accompanied by specific reasons, is not construed to apply to all motions, and certain assignments of reasons for a new trial set out in the opinion are held sufficient to cover the specific reason that the cost of certain extra work was not agreed to in writing before it was commenced.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover,* Judge.

REVERSED.

*J. T. Clayton* for appellants.

(1) The architect made his contract with and drew his pay from the owner of the building and acted for him in all matters pertaining to the contract. Northern Light Lodge Co. v. Kennedy, 73 N. W. 524; Lewis v. Slack, 27 Mo. App. 131.   (2) It is no breach of the bond to charge that parties threatened to file liens; hence, the court can readily see that no cause of action against sureties is stated in the petition.   (3) Plaintiff's testimony shows that the changes were not agreed to in writing and referee found as a fact "that extra work was not agreed to in writing before the work was done." Eldridge v. Fuhr, 59 Mo. App. 44; Killoren v. Meehan, 55 Mo. App. 427; Kane v. Thuener, 62 Mo. App. 69; Timmerberg v. Schramm, 71 Mo. App. 87; Taylor v. Jeter, 23 Mo. 244; Evans v. Graden, 125 Mo. 72; Bragg v. Shain, 49 Cal. 131; Ryan v. Morton, 5 Tex. 258; 2 Brandt on Suretyship, sec. 397; Fullerton Lumber Co. v. Gates, 89 Mo. App. 205.

*Ashley, Gilbert & Dunn* for respondent.

(1) The petition states a cause of action against the sureties as well as the contractor. Krey v. Hussman, 21 Mo. App. 343; Casey v. Gunn, 29 Mo. App. 24;

Ham v. Hill, 29 Mo. 275; State to use v. Tiedemann, 69 Mo. 515; Oberbeck v. Mayer, 59 Mo. App. 289; Bank v. Leyser, 116 Mo. 74.    (2)    Appellants' claim that sureties should have been released because referee found that $1,000 was not held back by owner until final certificate, is wholly untenable.   Hornblower v. Crandall, 78 Mo. 581; s. c., 7 Mo. App. 220; Cahill, Swift & Co. v. McCornish, 74 Mo. App. 609, and cases there cited; State ex rel. v. Elliott, 82 Mo. App. 458, 469; Stone v. Wolfskill Bros., 59 Mo. App. 441.   (3) Should the sureties have been held released by reason of an alleged departure from the tenth clause of the contract requiring extras to have been understood and agreed upon beforehand?   Cahill, Swift & Co. v. McCornish, 74 Mo. App. 609, and cases there cited; Stone v. Wolfskill Bros., 59 Mo. App. 441; Beers v. Wolf, 116 Mo. 179; Killoren v. Meehan, 55 Mo. App. 427; Eldridge v. Fuhr, 59 Mo. App. 44; Timmerberg v. Schramm, 71 Mo. App. 87.   (4)   Should the sureties have been held released because there was a departure from the requirements of clause eleven of the contract, the referee holding that there was such a departure and that the sureties should thereby be released and the trial judge holding that there was no departure whereby sureties were released?   Williams v. Railroad, 153 Mo. 487; Wentzville Tobacco Co. v. Walker, 123 Mo. 662; Utley v. Hill, 155 Mo. 232; Smith v. Baer, 66 S. W. 166; Chapman v. Railroad, 114 Mo. 542; Messner v. Lancaster County, 23 Pa. St. 291; Arnold v. Bournique, 20 L. R. A. 493; Dinsmore v. Livingston County, 60 Mo. 241; Williams v. Railroad, 112 Mo. 463; Taylor v. Jeter, 23 Mo. 244; Evans v. Graden, 125 Mo. 72; Bragg v. Shain, 49 Cal. 131; Ryan v. Morton, 65 Texas 258.

ELLISON, J.—Plaintiff and one Chambers contracted in writing, that the latter should build the former a house for the sum of $6,813.20.   The latter gave

Vol 95 app—9

a bond with defendants as sureties, conditioned that he would faithfully perform his contract. Plaintiff brought this action on the bond, charging a breach thereof. The case was referred to a referee, who found that defendants were discharged from their obligations as sureties. The circuit court sustained plaintiff's exceptions to the report and rendered judgment for the plaintiff.

It was provided in the contract that plaintiff would pay Chambers $6,813.20 for building the house, $5,813.20 in payments as the work progressed, upon the architect's certificates. Final payment of $1,000 when the work is completed and accepted by said architect. Each of said payments is to be due on the proper presentation of a certificate signed by the architect.

It was further provided as follows: "Sixth. Should the said second party, at any time during the progress of the work, make any alteration in the said drawings and specifications, the same shall in no way affect or make void this contract, but will be added to or deducted from the amount of the contract price, as the case may be, by a fair and reasonable valuation.

"Tenth. No work of any description is to be considered as extra work unless the same, shall have been understood and agreed upon in writing before such work is commenced. And the said first party is to use due diligence in executing all work to be done in accordance with the said contract.

"Eleventh. The said first party agrees to hold said second party harmless from any mechanic's liens, which might be filed by any of the employees of said first party for alleged non-payment of services for work or materials furnished under said contract; and the amount represented by certificates as issued previous to the final certificate shall not be greater than eighty-five per cent of the value of the work done, and in the building, which has been paid for by the said

first party; receipts showing this, are to be given to the said architect at each request for a certificate.''

1. Defendants contend that there is a failure to allege a breach of the contract, in that the petition charges ''that plaintiff was compelled to pay $588.77 to prevent the filing of mechanic's liens which might have been filed and were threatened to be filed by men and employees of Chambers for non-payment for materials furnished and services performed in and upon said building under said agreement;'' whereas, the contract was that Chambers would hold plaintiff ''harmless from any mechanic's liens, which might be filed by any of the employees'' of Chambers.

The particular point made is that plaintiff should have waited until the liens were filed, and that he was only to be protected from liens actually filed. We regard that construction as unreasonable. If the matters discharged by plaintiff were lienable and were about to be filed against his property, he had a right to pay them and is undoubtedly protected by the true intent and meaning of the contract. The words of the contract, ''which might be filed,'' mean claims that were lienable, that is, claims which were of such character as they might legally be filed and become a claim against plaintiff's property. The case of Morley v. Carlson, 27 Mo. App. 5, cited by defendants, was between parties not like these, and was based on facts not found in this case.

2. The finding of the referee aforesaid was based on what he deemed to be a violation of the eleventh clause of the contract just set out, in that plaintiff has paid out the full amount of the price of the building and had not reserved twenty-five per cent thereof as mentioned in said clause.

The theory of the referee was that such fund was to be reserved as a guaranty or assurance that Chambers would comply with his contract, and that it operated as a protection *pro tanto* to the defendants as

sureties.   Stated without qualification and control by
other portions of this particular contract, the referee
was right and the defendants properly discharged.
Evans v. Graden, 125 Mo. 72; Taylor v. Jeter, 23 Mo.
244.   But the facts are that plaintiff only paid out the
moneys, complained of in this respect, on the certificate
of the architect.   And *that* he was bound to do by the
terms of the contract itself; for by reference to the con-
cluding part of the second clause, aforesaid, it will be
seen that such are its express terms.   The architect was
the party agreed upon to determine when the payments
were to be made; that is to say, he was to determine
when the status of the work demanded a payment and
his certificate issued in good faith, bound all parties.
Chapman v. Railway, 114 Mo. 542.   It must necessarily
be the law that a surety for the performance of a con-
tract can not be discharged because of anything done
in pursuance of its provisions.   So we hold the circuit
court was right in rejecting the referee's conclusions of
law on this head.

3.   We are, however, of the opinion that a proper
construction of the sixth and tenth clauses of the con-
tract, under well-defined principles of law governing
sureties, must release these defendants.   By the terms
of the sixth clause, plaintiff, of his own volition, could
at anytime, change the drawings and specifications.
The referee properly interpreted this to mean extra
work, and that it should be connected with clause ten
in construing the meaning and effect of the latter
clause.   The latter clause positively prohibited extra
work unless it was understood and agreed upon in writ-
ing before it was commenced.   The extra work in this
case amounted to nearly double the amount of Cham-
bers' default of payment and there is no pretense that it
was agreed upon and reduced to writing.   But the
referee concluded that that provision was solely for the
benefit of plaintiff as owner of the building, and to pre-
vent any overcharges for extras.   That the contractor,

doing extra work without agreeing upon it in writing, took the risk of getting any pay for it, and that a violation of such clause could not harm the defendant sureties. It may be conceded that the clause was to protect the owner, but it was not wholly so; and if it was, the sureties would be entitled to whatever incidental benefit might flow to them from its observance. The clause was, however, highly important to the sureties, independent of the welfare of the owner. The sureties, when called upon to meet the default of their principal, had a right to look into the contract and the manner of its performance. In doing so they found that a contract of suretyship for a sum of $6,813.20 had been altered by being raised nearly one thousand dollars above that sum; and, so far as the principle is concerned, might have been raised to a much larger amount. Now it is true that in agreeing to see that the contract was performed by their principal, they agreed that the sum to be paid might be raised by extra work; but only on condition that it was put down in writing beforehand.

Thus it was provided in their own protection, as well as in protection of the owner, that if any extra work was done (which is nothing less than extra liability on their part) that there should be a record of it made in writing, so that they would not be put to the hazard of imposition from misunderstandings or otherwise. The agreement of a writing as an essential requisite to liability is too often made by law, and by business prudence, and has been found too valuable to be lightly put aside.

4. But plaintiff seeks to deny defendants the right to complain of the violation of the tenth clause, on the ground that no specific objection was made thereto in the motion for new trial. The motion for new trial contained the following:

"4. Because under the issues raised by the ref-

eree the judgment ought to have been for the sureties, defendants herein.

"5.   Because under the facts found by the referee the judgment ought to have been in favor of the defendant sureties."

It would have been better if the clause had been specifically named which entitled defendants to their discharge and consequently to a new trial.   But in this State the statute (sec. 640, R. S. 1899) requiring all motions to be accompanied by specifications of reasons, "and that no reason not so specified shall" be considered, is not construed to apply to all motions.   We require an objection made during the course of a trial to be specific without being directed to do so by the statute.   But when it comes to the motion for new trial, where the motion is, in terms, directed to be specific by the statute, we permit it to be as unspecific as the ingenuity of a defeated lawyer can find language in which to conceal what he really means.   If an objection to evidence is made in general words that it is "improper, incompetent and irrelevant," it would be held not to be a good objection because of it not being specific, notwithstanding there is no statute requiring it to be specific.   Yet the same words in a motion for new trial, which the statute directs shall be specific, are held to be sufficient.   State v. Noland, 111 Mo. 473, 492.   The judgment is reversed.   All concur.