THE CITY OF NEW HAVEN *vs.* THE NATIONAL STEAM
ECONOMIZER COMPANY ET AL.

Third Judicial District, New Haven, January Term, 1907.

BALDWIN, HAMERSLEY, HALL, PRENTICE and THAYER, Js.

A surety for the due fulfilment of a certain contract has the undoubted right to insist that his liability shall be measured and determined by the identical contract whose performance he guaranteed; but an immaterial departure from the letter of the contract, during its execution, does not change its identity nor relieve the surety from his obligation.

In the present case a building contract stipulated that payments to the contractor should be made by the plaintiff on the 15th of each month for 85 per cent. of the labor and materials actually in place, upon certificates from the architects, delivered to the plaintiff on or before the 5th of each month, stating that the work had been done pursuant to the contract. *Held* that in the absence of collusion and unfair dealing, mere variations from these dates in giving the certificates and in making the monthly payments, were purely technical and immaterial departures, of which the surety could take no advantage.

Having terminated the contractor's employment for cause, the plaintiff took charge of and finished the work and sought to recover the extra cost in an action on the bond. The surety contended that in view of the percentage of the entire work which had been performed by the contractor at the time of his dismissal, he had been paid more than he was equitably entitled to. *Held* that even if this were true it would not avail the surety, the plaintiff and the architects having acted in entire good faith, since the plaintiff's warrant for making the payments in question was to be found in the terms of the contract itself, which prescribed that the monthly payments should be for such sums as the architects certified were due.

Another clause of the building contract provided that the contractor should pay the city an agreed sum for each day's delay in his completion of the work. *Held* that the plaintiff was not entitled to pursue both of the special remedies prescribed for the faults and delays of the contractor; and that having elected to discharge the contractor, take over his work, and recover the additional cost in an action on the bond—a remedy which was complete and exhaustive in itself—the plaintiff had thereby deprived itself of the right to resort to the remedy for liquidated damages.

Argued January 22d—decided March 5th, 1907.

ACTION against a contractor and his surety, upon their bond, to recover damages for breach of the former's con-

tract to heat and ventilate a school building in the plaintiff city, brought to the Superior Court in New Haven County and tried to the court, *Shumway, J.*, after the defendant contractor had failed to appear; facts found and judgment rendered for the plaintiff for $14,907, and appeal by the defendant American Surety Company and also by the plaintiff. *No error.*

November 11th, 1901, the defendant, The National Steam Economizer Company, as contractor, entered into a written contract with the plaintiff, as owner, to install certain heating and ventilating apparatus in the latter's high-school building, for the contract price of $22,798. Article X. of the contract provided that this contract price, subject to such additions and deductions as were provided for, should be paid to the contractor in monthly payments to be made on the fifteenth day of each month, to the amount of eighty-five per cent. of labor and materials actually in place, upon certificates from the architects delivered to the owners on or before the fifth day of each month, stating that the work has been done in accordance with the terms of the contract; that the final payment should be made within ten days after the contract should be performed and the building accepted; and that all payments should be made upon written certificates of the architects to the effect that they had become due.

Two of the articles read as follows:—

"Article V. Should the contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, such refusal, neglect or failure being certified by the architects, the owner shall be at liberty after three days' written notice to the contractor to provide any such labor or materials, and to deduct the cost thereof from any money then due or thereafter to become due to the contractor under this contract; and if the architects shall certify that such refusal, neglect, or failure is

sufficient ground for such action, the owner shall also be at liberty to terminate the employment of the contractor for the said work, and to enter upon the premises and take possession, for the purpose of completing the work comprehended under this contract, of all materials, tools, and appliances thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor; and in case of such discontinuance of the employment of the contractor he shall not be entitled to receive any further payment under this contract until said work shall be wholly finished, at which time if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owner in finishing the work, such excess shall be paid by the owner to the contractor, but if such expense shall exceed such unpaid balance, the contractor shall pay the difference to the owner. The expense incurred by the owner as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through such default, shall be audited and certified by the architects, whose certificate shall be conclusive upon the parties.

" Article VI. The contractor shall complete the several portions and the whole of the work comprehended in this agreement by and at the time or times hereinafter stated, that is to say, the work shall be carried forward without delays, so that all of the trades may complete their respective works, and have the building entirely finished and completed on or before the 3d day of January, nineteen hundred and three, and in default thereof the contractor shall pay to the owner twenty-five dollars ($25) for every day thereafter that the said work shall remain unfinished, as and for liquidated damages."

Another article provided that all work to be done by the contractor should be seasonably done and as required by the specifications, and that the contractor was to have direction and superintendence of all work connected with the erection of its apparatus for the operation of which it was to be held responsible.

On November 15th said contractor as principal, and the defendant, The American Surety Company, as surety, entered into the bond in suit to the plaintiff in the penal sum of $15,000, conditioned that said contractor should faithfully and fully perform said contract.

Prior to July 1st, 1902, said contractor began work under said contract, and thereafter continued to prosecute it until December 27th, 1902. At that date, the contractor not having prosecuted the work with diligence and being in default in the performance of its agreements, and the architects having given the required certificate, the plaintiff terminated the contractor's employment, entered upon the premises, took possession of the work and materials, and thereupon assumed charge of the work. Prior to this date the plaintiff had paid the contractor the sum of $14,516.76, the same having been paid in several instalments and all upon architects' certificates certifying that the several amounts paid were due. The following table shows the times and amounts of these payments, and the dates of the architects' certificates pursuant to which each payment was made :—

| DATES OF CERTIFICATES. | DATES OF PAYMENT. | AMOUNT. |
|---|---|---|
| July 1, 1902. | Sept. 11, 1902. | $1,892.70 |
| Sept. 15, 1902. | Sept. 19, 1902. | 2,190.30 |
| Sept. 26, 1902. | Sept. 27, 1902. | 1,700.00 |
| Oct. 10, 1902. | Oct. 15, 1902. | 1,972.00 |
| Nov. 5, 1902. | Nov. 7, 1902. | 2,186.76 |
| Nov. 28, 1902. | Nov. 28, 1902. | 3,100.00 |
| Dec. 20, 1902. | Dec. 20, 1902. | 1,475.00 |

Before the architects' certificates were issued, the contractor in each case submitted to the architects detailed statements or estimates of the work and labor claimed to have been furnished and to be in place, with the value thereof. These estimates were examined and the actual cost to the contractor estimated as nearly as possible at current prices for the work and labor actually in place, and

the certificates given were in each case for not more than eighty-five per cent. of such cost so determined. Some of the work required was electrical and mechanical apparatus, which could only be obtained from certain manufacturing companies dealing specially therein. The architects had no means of knowing or ascertaining other than by inquiry of the contractor, or of said companies, at what price this apparatus could be or had been purchased, or what portion of the contract price was figured by the contractor therefor, or for labor. It did not appear that such inquiry was made, save as already stated.

In estimating, as stated, the probable cost of labor and materials actually in place, and in giving the certificates upon which payments were made, the architects acted in good faith and in the belief that the sums certified by them were no more than the contractor was entitled to receive under the terms of the contract, and said sums did not in fact exceed eighty-five per cent. of the value of labor and materials actually in place at the time the several certificates were issued, at the probable actual cost to the contractor, as nearly as the same could then be ascertained by the architects, in the manner aforesaid.

On December 27th, when the contractor's employment was terminated, between one third and one half only in value of the total work required by the contract was completed.

On January 16th, 1903, the plaintiff employed another corporation to complete the work required by the contract, which was thus completed June 29th, 1903. Under this employment the plaintiff paid $21,022.83 to the new company, of which about $600 was for the removal and replacement of defective work. On July 27th, 1903, the architects audited said payments and gave a certificate that the expense incurred by the plaintiff in the completion of the work was truly shown thereby.

Judgment was rendered for the excess of the total payments made by the plaintiff as aforesaid over and above the contract price of $22,798.

*Leonard M. Daggett*, with whom was *James Kingsley Blake*, for the plaintiff.

*George D. Watrous* and *Henry F. Parmelee*, for the defendant the American Surety Company.

PRENTICE, J.   Confessedly the defendant Surety Company, as the surety upon the bond in suit, which is one conditioned upon the faithful performance by the defendant Economizer Company of a certain contract entered into between it and the plaintiff, is liable to the plaintiff in the amount for which judgment was rendered, unless it be that, by reason of some conduct on the part of the plaintiff in its dealings with the Economizer Company with respect to the subject-matter of the contract between them, the surety's obligation became discharged either wholly or *pro tanto*.   The question here involved thus brings under review two contracts.   The first or principal one is a construction contract to which the plaintiff and the Economizer Company, hereinafter called the contractor, are alone parties.   This instrument defines their undertakings.   To the second contract, the Surety Company is a party together with the two parties to the construction contract.   It is this contract, therefore, which creates and defines its obligation and liability, which proves to be that of a surety for the faithful performance by the contractor of its undertakings as set out in the construction contract.   This latter contract is thus made to assume an importance which it would not otherwise have, as determining the nature and scope of the duty whose performance is secured by the former, and in the determination of any question as to whether or not there has been any breach of the condition of the former through a breach of the provisions of the construction contract.   *New Haven* v. *Eastern Paving Brick Co.*, 78 Conn. 689, 698, 63 Atl. 517.   Thus the Surety Company becomes indirectly concerned with the provisions of the latter instrument.   This concern while in one sense vital, is in another limited.   It is vital, in that having by

the bond assumed a liability measured and determined in part by the terms of the contract whose performance it has guaranteed, it is important to it that this liability should not be changed by the substitution, by whatever means, of a different contract; and it has the clear right to insist that such a substitution should not be made, if it is the purpose of the obligee in the bond to look to its security. This substitution may be accomplished, in legal effect, either by material changes in the terms of the contract, or by material departures from its terms in its execution and enforcement. Immaterial changes and departures, however, or, as otherwise expressed, changes which are not in matters of substance, do not amount to a change in the identity of the contract. *Rowan* v. *Sharps Rifle Mfg. Co.*, 33 Conn. 1, 23; *Chester* v. *Leonard*, 68 id. 495, 508, 37 Atl. 397; *United States* v. *Freel*, 186 U. S. 309, 318, 22 Sup. Ct. Rep. 875. Whenever it is self-evident that the alteration or departure is neither a substantial one nor one which can be prejudicial to the surety, it is regarded as an immaterial one. *Holme* v. *Brunskill*, L. R. 3 Q. B. Div. 495, 505. But while the concern of the surety in the principal contract is thus a vital one, it is only in its relation to the surety's liability under another contract, its contract of suretyship, that it exists at all. Beyond the point where this liability is touched, the Surety Company, being a stranger to the construction contract, has no interest in it. For these reasons it follows that the defendant Surety Company cannot found a defense upon any conduct of the parties to the principal contract which is either conformable to its provisions, or, being a departure from its letter, was not a material one.

The defendant Surety Company in its reasons of appeal points out only two incidents of the plaintiff's dealings with the contractor as supporting its contention that there had been such a material departure from the terms of the construction contract as accomplished a discharge of its surety obligation. The first of these is the fact that payments on account of the contract price were made to the contractor

on dates other than the fifteenth day of each month and on architects' certificates made out after the fifth day of that month. The second, and the one most emphasized, is the fact that the payments made exceeded in amount eighty-five per cent. of the value of the labor and materials actually in place, as determined by the ratio of their value to the value of the entire amount of labor and materials required for the completion of the whole contract upon the basis of the contract price.

The variations from the letter of the contract, arising from payments to the contractor having been made upon other days of the month than the fifteenth, and upon certificates bearing dates subsequent to the previous fifth day of the month, clearly were not material ones. It is easy to conceive of such variations in the matter of time, involving an unwarranted anticipation of payments not due, or unfair dealing, as might be of serious consequence to the surety. Here, however, no such situation, nor the possibility of one, is disclosed. All that appears is that some other dates than the fifteenth happened to be those upon which all the payments save one were made, and that the plaintiff did not insist upon refusing to honor a certificate which was not delivered to it by the preceding fifth of the month. The facts found go no further. The subject is left with a simple disclosure of a variance in dates. It is possible to imagine, or even to suspect, that one or more payments may have been made at an earlier date than would have been the case had the letter of the contract been strictly complied with. Such, however, is not found to have been the fact, and we are not entitled to assume it for the purpose of working a complete or partial forfeiture of this bond. Whatever force, therefore, be given to the provision in question, and however much it be regarded as of the essence of the construction contract, it appears that the departures therefrom, in so far as they are disclosed, were purely technical ones and such as were in the fullest sense immaterial and unsubstantial.

With respect to the second matter relied upon as caus-

ing a substitution of contracts, it appears that when the construction contract was terminated, from thirty-three to fifty per cent. only of the total work required by it had been completed, while approximately sixty-five per cent. of the contract price had been paid, and that too, notwithstanding that only eighty-five per cent. of the value of the labor and material furnished was to be paid during the progress of the work.  This is charged against the plaintiff as conduct without authority in the contract.  The contract provides for payments during the progress of the work, the same to be made monthly to the amount of "eighty-five per cent. of labor and materials actually in place," and upon certificates of the architects stating that the work had been done in accordance with the contract and that the payments had become due.  The finding discloses that all the payments were made upon such certificates and made in good faith.  It also discloses that the architects gave these certificates for eighty-five per cent. only of their estimates of the value of the labor done and materials furnished upon work in place, and that in making said estimates and giving said certificates they acted in good faith and in the belief that the several sums allowed and certified to by them were no more than the contractor was entitled to receive under the terms of the contract.

The Surety Company contends that the progress-payments thus made, at the time that the plaintiff assumed charge of the work, amounted to a considerable overpayment on the contract price.  It says that in determining the amounts which were from time to time due and payable, an important factor was entirely overlooked and no regard had, as there should have been, to the ratio of the value of the work in place to the entire work, as showing what proportion of the contract price was fairly due for that proportion of the work which had been completed. The question thus presented, as to the proper method of arriving at amounts payable in such a case, does not call for our present consideration, since, whatever importance

it might have as bearing upon the duty of the architects, it is without importance as bearing upon the rights of the plaintiff in this action. The contract between the plaintiff and the Economizer Company provided for progress-payments upon the certificates of the architects as to the amounts due. It is unnecessary to inquire whether under the terms of the instrument, when such certificates were given, the plaintiff, in the absence of collusion and unfair dealing, was or was not under a present legal duty enforceable at law to pay to the contractor the amounts so certified. He was at least entitled to make the payments and was under no duty to review or revise the work which the parties had committed to the architects. *McAvoy* v. *Long*, 13 Ill. 147; *Chapman* v. *Kansas City, C. & S. R. Co.*, 114 Mo. 542, 549, 21 S. W. 858; *Chapman* v. *Eneberg*, 95 Mo. App. 127, 68 S. W. 974. So it is that the plaintiff, when in entire good faith it accepted and honored the several progress-certificates made out by the architects, acted entirely within and not without the provisions of the construction contract. It did that which the contract justified it in doing, and the surety, therefore, cannot complain of its conduct in that regard.

The plaintiff appeals from the refusal of the court to award it any sum as liquidated damages for the non-completion of the work within the stipulated time. It appears that the plaintiff, before this time had expired, in the exercise of its rights under the contract, elected to terminate the contractor's employment, to deprive it of all further control of the work and to itself assume that control. The plaintiff in the contract reserved to itself two special remedies against the contractor's defaults and delays. Under article V. it was given the power to terminate the employment and take charge of the work. Certain consequences were made to attend upon that course of action. Under article VI. it was accorded the right, under prescribed conditions, to receive from the contractor, as liquidated damages, an agreed sum per day for delay in completion. The election which it made as between these two remedies, to

avail itself of the former, deprived it of the right to resort to the latter.   Article V. is framed with no little elaboration and a careful attention to detail which plainly indicates the intention to meet the whole of any situation which might be developed through a resort to its provisions.   The rights of the parties in settlement are dealt with in language which is not only general and comprehensive, but which also unmistakably indicates a purpose to establish a basis for a full and complete adjustment of claims through the authoritative and final arbitrament by the architects.   It is provided that not alone the expense of completion, but also any damage incurred through the contractor's default, should be audited and certified by the architects, whose certificate should be conclusive upon the parties.   This provision for the inclusion in the award of the architects, of compensation for any damage suffered by the plaintiff through the contractor's default, whatever be the basis to be employed for its ascertainment under possible conditions, is one which could leave nothing in the way of uncompensated injury to furnish the foundation for an additional recovery in the form of liquidated damages.   Under such conditions any award under article VI., in the guise of liquidated damages, would inevitably resolve itself into the recovery of a penalty pure and simple, with nothing by way of actual damage behind it.   *Tingley* v. *Cutler*, 7 Conn. 291, 295 ; 1 Sutherland on Damages (3d Ed.), § 283.

There is no error.

In this opinion the other judges concurred.