RUFUS J. LACKLAND et al., Trustees, Appellants,
v. EDWIN and RAY RENSHAW and the
AMERICAN SURETY COMPANY OF NEW
YORK.

Division Two, March 24, 1914.

1. SURETY COMPANIES: Bonds: Construction. The doctrine
that a surety is a favorite of the law, and that a claim against
him is *strictissimi juris,* does not apply where a bond is executed
for a consideration by a corporation organized to make such
bonds for a profit. Such undertakings should be construed
most strongly in favor of the obligee.

2. ——: ——: ——: Building Contract: Alterations. The
surety for a consideration on a bond given to secure the per-
formance of a building contract which provided that valuations
of all alterations should be made by the architects and added
to or deducted from the contract price, and in case any such
valuation was not agreed to the contractors should proceed
upon the written order of the architects and the valuation be
referred to arbitrators, is not released from his obligation be-
cause such valuations were not made before the work was done
under the changed specifications, but when the work was near-
ing completion the contractors, a representative of the owners
and the superintendent for the architects made a list of
changes and agreed upon the sums to be added to or subtracted
from the price—an agreement afterward approved by the archi-
tects.

3. ——: ——: ——: ——: Payment in Installments: Arch-
tects' Order. Where all money paid upon a building contract
went into the building, a surety for a consideration upon a bond
securing the performance of the work is not released because,
while the contract provided for payment in specified install-
ments upon the order of the architects specifying in each case

that the work had been done to their satisfaction, the architects' orders did not in fact specifically certify that the work had been done satisfactorily, nor because, without the knowledge of the surety, advancements were made to the contractors.

4. ———: ———: ———: ———: **Failure to Complete Building on Time: Notice.** Although the bond of a surety company securing the performance of a building contract provided that upon default by the contractors in the performance of any of the terms, covenants or conditions of said contract the company should be notified within ten days, the surety is not released from liability for the contractors' failure to pay material and labor bills, because the owner failed to notify the surety of the contractors' failure to complete the building within contract time, time not being of the essence of the building contract and the owners asking no damages for delay.

5. ———: ———: ———: ———: **Payments by Owners for Labor and Material: Notice.** A surety company having given a bond to secure the completion of a building contract which provided that should there be any claim, after payment of the contract price, for failure of the contractors to pay material and labor bills, the contractors should reimburse the owners for payments made on account of such default, and the owners having paid such claims in excess of the contract price without reimbursement from the contractors and having notified the surety company of the claims, the company will not be released merely because the owners failed to give notice of such claims as each debt was incurred.

6. **REFERENCE: Approved Findings: Special Verdict.** A referee's findings when approved by the trial court constitute a special verdict.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow*, Judge.

REVERSED AND REMANDED (*with directions*).

*Judson & Green* for appellants.

(1) The notices of the contractor's default given to the surety company by plaintiffs were a sufficient compliance with the terms of the bond. Grocery Co. v. Guaranty Co., 130 Mo. App. 431; Fidelity Co. v. Bank, 97 Ga. 634; Ins. Co. v. Surety Co., 93 Cal. 7; Bldg. Assn. v. Gibbs, 119 Mich. 318; Surety Co. v.

Pauley, 170 U. S. 133; Roark v. Trust Co., 130 Mo. App. 410; 1 Brandt on Suretyship (3 Ed.), sec. 16. (2) Under the undisputed evidence in this case the referee and the trial court erred in failing to find and hold that even if the plaintiffs did not comply with the strict letter of the bond in respect to giving notice of the contractor's default to the surety company, yet all such defects in said notices were waived by the said surety company for the following reasons: (a) The bond sued upon in this case, having been signed by a regularly incorporated surety company and having been issued on a printed form prepared by the surety company in consideration of a cash premium payment, is essentially a contract of insurance and must be construed as such. Brandt on Suretyships (1905 Ed.), sec. 5; 15 Am. & Eng. Ency. Law (2 Ed.), p. 1; Boppart v. Surety Co., 140 Mo. App. 683; Roark v. Ins. Co., 130 Mo. App. 407; 32 Cyc. 307; Shawman v. U. S. System Co., 92 Wis. 366; Bldg. Assn. v. Obert, 169 Mo. 509; Surety Co. v. Pauley, 170 U. S. 133; People v. Rose, 174 Ill. 310; Davidson v. Kansas City, 133 S. W. 368; Cowles v. Fidelity Co., 72 Pac. 1032; Young v. Bonding Co., 228 Pa. 373; Land Co. v. Surety Co., 105 Minn. 213; Monro v. Surety Co., 92 Pac. 280; Surety Co. v. Scott, 18 Okla. 264; United States v. Fidelity Co., 178 Fed. 721; Peabody v. Realty Co., 126 N. Y. Supp. 349; State to use v. Turner, 101 Md. 584; Ice Co. v. Surety Co., 159 Mich. 102; United States v. Fidelity Co., 178 Fed. 692. (b) Failure to object promptly at the time these various notices were received was also a waiver of the right to object to the form of the notices or to their lack of verification or to their failure to contain a list of items with dates, even if the surety's pleadings had not waived it. McCullough v. Ins. Co., 113 Mo. 606; Boppart v. Surety Co., 140 Mo. App. 675; Roark v. Surety Co., 130 Mo. App. 401; Travis v. Ins. Co., 32 Mo. App. 198; Deland v. Ins. Co., 68 Mo. App. 277; Breckenridge v. Ins. Co.,

87 Mo. 62; Ins. Co. v. Kyle, 11 Mo. 278; Sinn v. Ins. Co., 47 Mo. 54. (3) Under the decisions of this court it was not necessary for plaintiffs to plead such waiver in their reply to the surety company's answer, but they were entitled to show it under the plea of performance in their original petition. Andrews v. Ins. Co., 168 Mo. 151; Suess v. Ins. Co., 193 Mo. 564; Burgess v. Ins. Co., 114 Mo. App. 169, l. c. 190; Rudd v. Ins. Co., 120 Mo. App. 1. (4) The referee erred in holding that the contract sued upon required that alterations in the plans and specifications could only be made on the written order of the architects. That provision of the contract only applied to changes and alterations as to the cost of which the owners and the contractor could not agree. Furniture Co. v. Toll, 133 Mo. App. 407. The alterations in the plans and specifications in this case were all made according to the strict terms of the contract and it was not necessary to obtain the consent of the surety thereto. 6 Cyc. 83; Furniture Co. v. Toll, 133 Mo. App. 407; Howard Co. v. Baker, 119 Mo. 406. (5) The position before the court of a compensated and indemnified surety company which is in the business of executing such bonds for profit is radically different from that of the old fashioned accommodation surety. *Cessante ratione legis, cessat ipsa lex.* Brown Legal Maxims (160); Frost on Guaranty Ins., secs. 1, 2 and 4; 32 Cyc. 307 ,and cases cited; Bldg. Assn. v. Obert, 169 Mo. 519; Roark v. Trust Co., 130 Mo. App. 401; Gro. Co. v. Surety Co., 130 Mo. App. 430; Boppart v. Surety Co., 140 Mo. App. 675; Kansas City v. Davidson, 133 S. W. 365; Brandrup v. Brazier, 127 N. W. (Minn.) 424; Monroe v. Surety Co., 92 Pac. 280; Surety Co. v. Scott, 18 Okla. 264; United States v. Surety Co., 200 U. S. 197; Surety Co. v. Pauley, 170 U. S. 133; Fidelity-Guaranty Co. v. U. S., 191 U. S. 426; People v. Rose, 174 Ill. 310; Bank v. Fidelity Co., 128 N. C. 366; Land Co. v. Surety Co., 105 Minn. 213; Leghorn v. Neydell,

80 Pac. 833; Walker v. Holtzlaw, 35 S. E. 754; Tebbetts v. Guaranty Co., 73 Fed. 95; Van Buren Co. v. Surety Co., 115 N. W. (Iowa) 24; Ice Mfg. Co. v. Bonding Co., 115 Ky. 863; Philadelphia to use v. Fidelity Co., 80 Atl. (Pa.) 63; Young v. Bonding Co., 228 Pa. St. 376; United States v. Fidelity Co., 178 Fed. 721; Peabody v. Realty Co., 126 N. Y. Supp. 349; State to use v. Turner, 101 Md. 584; Ice Co. v. Surety Co., 159 Mich. 102; Rule v. Anderson, 142 S. W. 358. (a) The hired surety company is not released from liability on a building bond by pre-payments to the contractor, unless such pre-payments result in some loss or injury to the surety. Boppart v. Surety Co., 140 Mo. App. 683; Leghorn v. Nydell, 80 Pac. 833; Hand Mfg. Co. v. Marks, 36 Ore. 533; Bateman Bros. v. Surety Co., 145 Cal. 243; Philadelphia to use v. Fidelity Co., 80 Atl. (Pa.) 63; Surety Co. v. Scott, 18 Okla. 268; United States v. Fidelity Co., 178 Fed. 721; College v. Indemnity Co., 120 N. Y. Supp. 496. (b) The indemnified and compensated surety company is not released from liability on the bond by payments made to the contractor without the architects' certificate when it affirmatively appears, as it does here, that the surety company was not damaged thereby. Surety Co. v. Scott, 18 Okla. 268; Cowles v. Fidelity & Guaranty Co., 72 Pac. 1032; Smith v. Malleston, 148 N. Y. 241; Leghorn v. Nydell, 80 Pac. 833; Surety Co. v. Loan & Trust Co., 98 S. W. 387; Philadelphia v. Fidelity Co., 80 Atl. (Pa.) 63; Boppart v. Surety Co., 140 Mo. App. 675; College v. Indem. Co., 120 N. Y. Supp. 496. (6) The weight of authority is that the burden of proof is upon the compensated surety to show that it has been damaged or prejudiced by any variation from the strict terms of the contract or bond which it claims has operated to release it from liability. Philadelphia to use v. Fidelity Co., 80 Atl. (Pa.) 63; United States v. Fidelity Co., 178 Fed. 721; Guaranty Co. v. Brick

Co., 191 U. S. 416; Cowles v. Fidelity Co., 72 Pac. 1032.

*J. D. Johnson* and *Loomis C. Johnson* for respondent Surety Company.

(1)  The appellants are bound by the referee's "Findings and Conclusions of Facts"—(a)  Because in their abstract they accept the same as correct for the purpose of this appeal.  (b)  Because the abstract in the case is wholly inadequate to advise this court as to what was the evidence upon which the referee based his findings.  Rule 13 of the Supreme Court Rules; Harding v. Bedoll, 202 Mo. 631; Hubbard v. Slavens, 218 Mo. 614.  (c)  The referee's findings of fact in an action at law, when approved by the trial court if supported by substantial evidence, are conclusive on the appellate court.  Bader v. Mill Co., 134 Mo. App. 143; Reifschneider v. Beck, 148 Mo. App. 736.  (2)  The rule which operates to discharge an accommodation surety by reason of an alteration of the terms of a contract, without the knowledge or consent of the surety, applies as well to a compensated surety.  Lonergan v. L. & F. Co., 101 Tex. 76; Taylor v. Jeter, 23 Mo. 244; Beers v. Wolf, 116 Mo. 184; Martin v. White, 128 Mo. App. 125.  The only modification of the rule indulged in the case of a compensated surety is that the contract of suretyship in the event of ambiguity is to be construed against the surety.  Kansas City v. Davidson, 133 S. W. 368.  It is the settled law of this and other jurisdictions that there is no implied obligation on the part of a surety whether accommodation or for hire, that he has undertaken more or other than that expressed in his contract, and it is only to the extent, in the manner, and under the circumstances pointed out in his bond that he is bound.  Bauer v. Cabanne, 105 Mo. 110; Nofsinger v. Hartnett, 84 Mo. 549; Reissons v. Whites, 128 Mo. App. 135; Beers

v. Wolf, 116 Mo. 179; School Dist. v. Green, 134 Mo. App. 421; Higgins v. Harvester Co., 181 Mo. 300; Burnes Est. v. Fidelity Co., 96 Mo. App. 467; Bank v. U. S., 164 U. S. 237; Simonson v. Thori, 36 Minn. 439; U. S. v. Am. B. & T. Co., 32 C. C. A. 420; Backus v. Archer, 109 Mich. 666; Shelton v. Surety Co., 66 C. C. A. 94; Zeigler v. Hallahan, 131 Fed. 205; Garstairs v. Am. Bond. Co., 54 C. C. A. 89; Guaranty Co. v. S. B. & T. Co., 183 U. S. 421; Surety Co. v. Lang, 60 C C. A. 625; Rice v. Fidelity Co., 43 C. C. A. 275; Indemnity Co. v. Wood, 19 C. C. A. 264; Am. Cr. Ind. Co. v. Carrollton Co., 36 C. C. A. 671; Jeffries v. Ins. Co., 22 Wall. 54; Ins. Co. v. France, 91 U. S. 401; Stearns' Law of Suretyship, sec. 250; Dobbin v. Bradley, 17 Wend. 422; Knight Co. v. Castle, 87 N. E. (Ind.) 976.  (3) He who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for a subsequent failure on his part to perform.  Surety Co. v. Lang, 60 C. C. A. 628; Sick v. Ins. Co., 79 Mo. App. 612; Corrabine v. Cox, 136 Mo. App. 376.

BLAIR, C.—This controversy arises upon a surety bond given to secure plaintiffs against loss by reason of any failure of the defendant contractors to perform their contract to erect a building in St. Louis. The trial court gave judgment for the defendant surety company.  The questions presented relate solely to the efficacy of certain facts to release the surety from its obligation.  Respondent company is in the business of acting as surety, charging a premium therefor.  It had received compensation for becoming surety on the bond in suit.

The defenses and findings upon which the surety was released below will be examined in order.  They must be viewed in the light of some applicable general principles.

By the general law of suretyship, evolved at a time when sureties were all of the class whose obligations were entered into from motives of friendship and without pecuniary considerations moving to them, any change in the contract releases the surety, unless made with his consent.

"But the rule of *strictissimi juris* is a stringent one, and is liable at times to work a practical injustice.

Sureties for Profit.

It is one which ought not to be extended to contracts not within the reason of the rule, particularly when the bond is underwritten by a corporation which has undertaken for a profit to insure the obligee against a failure of performance on the part of the principal obligor." [Hill v. American Surety Co., 200 U. S. l. c. 202.]

"The doctrine that a surety is a favorite of the law, and that a claim against him is *strictissimi juris,* does not apply where the bond or undertaking is executed upon a consideration by a corporation organized to make such bonds or undertakings for profit. While such corporations may call themselves 'surety companies,' their business is in all essential particulars that of insurers. Their contracts are usually in the terms prescribed by themselves, and should be construed most strongly in favor of the obligee." [32 Cyc. 306.]

So far the decisions are in practical accord though there is a wide divergence of opinion as to the effect and application of these principles.

Building Contract: Alterations.

In this case one ground upon which the surety was held released was that changes had been made in the plans without the surety's consent.

The contract provided: "Should any alteration be required in the work shown or described by the drawings or specifications, a fair and reasonable valuation of the work added or omitted shall be made by the architects, and the sum herein agreed to be paid

for the work according to the original specification shall be increased or diminished as the case may be. In case such valuation is not agreed to, the contractors shall proceed with the alteration upon the written order of the architects, and the valuation of the work added or omitted shall be referred to three arbitrators'' selected in a prescribed manner.

The referee's finding on this phase of the case is that alterations in the work were made from time to time but that the architects did not pass upon these changes and determine, before each was made, the sum to be added or deducted on account of it; that the changes were not made upon the written order of the architects, nor was arbitration asked by the contractors. He finds that in July, after the building was nearing completion, the contractors and the representative of plaintiffs and local superintendent for the architects, went over the building and made a list of changes; having made the list, the parties agreed upon the sums to be added and subtracted. The list of changes and agreed allowances were put in writing and signed by the parties and approved and signed by the architects. The net result was the enhancement of the contract price by $391 and the payment of that additional sum to the contractors. The referee concludes his finding on this branch of the case thus: ''So far as the allowances made in this exhibit to the defendants Renshaw, for changes and alterations, are concerned, the referee believes and finds they were fair and reasonable and not in excess of their true value; but as already suggested, they were not agreed upon in the manner provided for in the contract.''

On his view, the departures from the contract made were (1) the failure of the architects to fix the increase or decrease of the contract price before the change was made; (2) that the changes were not made upon the written order of the architect; and (3) that arbitration was not requested by the contractors.

By the quoted clause of the contract, the parties had the right to alter the plans, and a fair and reasonable increase or decrease in the contract price was to follow any such alteration. The architects were to determine what increase or decrease was fair and reasonable in each case. That was the extent of the surety's interest. That was done in this case. The contract does not specifically provide that the architects shall make their estimate in advance of the doing of the work under the changed specifications. Such a construction of the first sentence of this paragraph of the contract is merely an inference from the following sentence, the real function of which, however, is to provide a method whereby the contractors can be compelled to proceed in case of a disagreement.

In view of the principles above announced, it appears the learned referee applied too strict a rule on this branch of the case. The surety lost nothing, its risk of loss was in no way increased and, in fact, in the end it received the exact protection to which the contract entitled it.

In Chapman v. Eneberg, 95 Mo. App. 127, there was an express provision in the contract to the effect that "no work of any description is to be considered as extra work unless the same shall have been understood and agreed upon in writing *before such work is commenced.*" That case is, therefore, unlike the one at bar. The contract provision and the facts in Furniture Co. v. Toll, 133 Mo. App. l. c. 407, resemble closely those in this case, and the decision therein is in full accord with the conclusions reached above.

Payment in Installments: Architects' Orders.

Another ground upon which the referee held the surety released was that plaintiffs had disregarded the contract provisions as to the payment of installments of the contract price.

The contract price was $26,838 and was to be paid in twelve installments, each falling due when the work

reached a designated stage, it being also provided, "that the final payment shall be made within ten days after this contract is completely finished; provided, that in such of the said cases the architects shall certify in writing that all the work upon the performance of which the payment is to become due has been done to their satisfaction."

In this connection the referee finds that the certificates or orders given by the architects were in the following form:

"No. 1.        Office of J. B. Legg, Architect.
                St. Louis, December 29, 1902.
Missouri Botanical Garden:

Pay to the order of Renshaw & Son one thousand and five hundred ($1500) x-100 dollars, on account of their contract for building your Eddy factory building, S. W. Corner Market and Main streets.   $1500.00.
                J. B. LEGG, Architect."

The referee finds the orders sufficiently identified plaintiffs as trustees and sufficiently identified the building under construction but holds the failure of the architects to specifically certify that the work, upon the performance of which the payment became due, had been done to the satisfaction of the architects, released the surety, and also finds that certain payments were made in advance of the giving of the orders, and for this additional reason holds the surety was released.

The referee expressly found that all the money paid went into the building "in the shape of work done or material furnished."

In Wyckoff v. Meyers, 44 N. Y. l. c. 144, the contract provided for final payment upon the architects' certifying that the work "was completely finished." The architects certified simply that the final payment was due under the contract, and this was held sufficient.

In Bannister v. Patty's Exrs., 35 Wis. 215, the contract prohibited payments except upon a certificate of the architect setting forth the amount of stone furnished and its value "and that the same is to his satisfaction."

The court said (l. c. 226): "The certificate does not state, in terms, that the work is to the satisfaction of the superintendent, but it fixes the value thereof at the contract price, and states no objection thereto. This, we think, is equivalent to a statement that the work was done to his satisfaction."

Other cases to a like effect are Anderson v. Meislahn, 12 Daly, 149; Tilden v. Buffalo Office Building Co., 50 N. Y. Supp. (App. Div.) 511.

Those were suits against the owner, and the certificates were held to support an action by the contractor. They are in point here because if a certificate is sufficient to enable the contractor to force the owner to pay, the contractor's surety could not maintain that they were insufficient to the extent that payment not under compulsion would have been unjustifiable.

No particular form of certificate is required in a case like this; and no fraud on the part of the architects having been so much as suggested and the money paid having all gone into the building, as the referee finds, we hold the certificates in this case were sufficient in the circumstances and their informality did not warrant judgment for the surety.

The additional question in this connection is as to the effect to be given the advancements, loans or payments made before the certificates were given by the architects.

The date of the first certificate was December 29, 1902.

The referee finds that on December 4th the contractors received from Mr. Cunningham, representing plaintiffs, $500; on December 13, $300, and on December 22, $300—a total of $1100. When the contractors

received their first order from the architects (for $1500) they presented it and were paid $400. Similar advancements were made on the five succeeding installments. When the tenth installment became due, the full amount had already been received by the contractors. Whenever a sum was advanced a written receipt was taken reciting that it was a loan upon the security of the next installment to become due under the contract.

These advancements were made without the knowledge of the surety, and the referee held the surety was discharged thereby.

When installments under a contract secured by an accommodation surety are paid before they are due and without the surety's consent, the rule is well established that the surety is thereby released. In such case the injury to the surety is presumed. This is the result of the doctrine that such a surety is a favorite of the law. The retention of installments by the obligee until the work reaches the prescribed stage is said to furnish an incentive to the contractor to complete the work within the prescribed time.

Ought a presumption of injury or that the surety's risk was increased be indulged in this case? The referee finds expressly that all these sums went to pay for labor and materials actually employed in the construction of the building. This finding conclusively disproves injury as a fact. That being true, and the presumption of injury under like circumstances in favor of an accommodation surety being indulged because of the rule that such a surety is a favorite of the law and that rule being inapplicable to a surety whose engagement is undertaken for compensation, no presumption of injury found as a fact not to have occurred ought to be indulged to release such a surety.

There is authority supporting this view. [American Surety Co. v. Scott & Co., 18 Okla. l. c. 272, 273;

Monro v. National Surety Co., 47 Wash. l. c. 488, 92 Pac. l. c. 281, 282.] Concerning a like question, the Supreme Court of Washington in Leghorn v. Nydell, 39 Wash. 17, said: "Whether this [a prepayment] was a loan, as claimed by the respondent, or an advancement under the contract, as claimed by the appellant, is wholly immaterial. The money was used by the contractor in the construction of the building, and the appellant was benefited rather than prejudiced by the irregular payments."

The surety in this case is in no position to complain that the tenderness courts see fit to show the accommodation surety, always an object of the greatest solicitude, is not shown to it. Its situation is entirely different. It is to be dealt with in the light of its real relation to the contract—an *insurer* of its performance.

The learned referee also held the surety discharged on a third ground.

The bond is conditioned to be void if the contractors performed the contract, otherwise to remain in full force and effect. Then follows: **Notice of Default: Failure to Complete Building.** "Provided, however, and upon the following further express conditions: First, That in the event of any default on the part of the principal, in the performance of any of the terms, covenants or conditions of said contract, written notice thereof, with verified statement of the particular facts showing such default and the date thereof, shall, within ten days after such default, be delivered to the surety at its office," in St. Louis.

The contract provided that the building should be completed May 1, 1903. April 28, plaintiffs wrote the surety company stating that while the work was progressing satisfactorily yet it appeared that the payments to the contractors, as they matured under the contract, were insufficient to meet their labor bills in the early stages of the building, and asking permission

to pay "these material bills" before installments under the contract fell due.

On May 22 the surety company wrote plaintiffs giving permission to pay "material bills now due, upon the order of" the contractors and explaining the delay in replying by saying that it had been caused by delay in securing consent of the surety's indemnitors. The contractors continued their work, and on June 30 plaintiffs, by their secretary, wrote the surety company, among other things, as follows:

"We desire now to further notify you that the said Renshaw & Son are unable to perform all the conditions of their contract. First, the said contractors are unable to make the payments for labor employed and material furnished for the said building as it progresses, and in order to prevent any filing of lien claims therefor we have found, and still find it necessary, to make payments to the sub-contractors, material men and laborers directly, for their said material and services, in advance of the regular installments of payments to contractors, and to deduct the same from the installments of payments accruing thereafter, to the said contractors.

"While we are empowered under the contract to make such payments and such deductions, we wish to notify you of the inability of the contractors for lack of adequate means to perform their contract, forcing us to take such steps. We have prepared a list of all the liabilities of said contractors remaining unpaid and required to be paid, for the completion of said building so far as we can ascertain, which list we are prepared to submit to you for your inspection whenever desired.

"You are further notified that by the terms of their contract, in the 6th clause thereof, the building was contracted to be finished on the first day of May, 1903. It was not finished at said date and will not be finished before about the first day of August, 1903. We understand that the contractor claims that some part

of this delay was due to causes excepted in the contract, but as no formal claim has been filed by them for such allowance, we cannot state it with more particularity.''

To this letter the surety company did not reply and in no way objected to its sufficiency until answer filed.

About August 15 the contractors ceased work on the building, and plaintiffs caused some work to be done on the building, but before the building was fully completed they wrote the surety company, September 12, referring to their letter of June 30, and stating that certain work remained to be done; that they had paid out all but about $100 of the contract price, on the contractors' orders, for labor and materials; that there remained due and unpaid bills for material used in constructing the building and to subcontractors, amounting to $7200 to $7500, according to an itemized and verified statement enclosed.

September 16 the surety company replied stating they would take the matter up with *their indemnitors* and stating they would attempt to have the contractors ''straighten the matter out at the earliest possible moment.''

October 12 plaintiffs again wrote the surety company saying the building was still uncompleted and that they had notified the contractors they must proceed within three days or they, plaintiffs, would take charge and finish the work, as the contract contemplated they might. They also notified the surety that lien claimants were serving notices and that costs would accumulate unless the matters were attended to.

In response to this letter the surety company wrote:

''Your favor of Oct. 12 with reference to bond executed for Renshaw & Son received this p. m., in which you desire an answer by Wednesday noon as to

whether we desire to complete the building and pay the claims mentioned in your letter.

"Reply, we beg to say that we have conferred with Messrs. Renshaw & Son, as well *as our indemnitors,* concerning the completion of the building, and we are informed by them that they at one time sent men to the building for the purpose of completing the same, and that they were ordered away by your superintendent. Under these circumstances this company is powerless at the present time to either complete the building, or to pay any alleged claims for material or otherwise.

"You can readily, no doubt, understand our position; that were we to do any work on the building, or pay any claims alleged to be due, without being directed by Renshaw & Son, or our indemnitors assenting thereto, that the latter would be released from any liability that might possibly accrue in the future to this company. This is about all we can say at this time, and of course you are at liberty to take such action with reference to the matter as you may see fit."

The referee finds that the sums paid by plaintiffs for labor and materials which went into the building exceeded the contract price by $7473.34.

Plaintiffs are not contending for any recovery by reason of the delay of the contractors in finishing the building. The referee made a separate finding to the effect that in no event could the surety be held for any amount for such delay.

In such circumstances there is an abundance of authority for the view that failure to notify the surety of the contractors' failure to complete the building in contract time does not release the surety. [Pulaski Hall Assn. v. Am. Surety Co., 123 Minn. l. c. 225, 143 N. W. l. c. 716, 717, and cases cited; American Surety Co. v. Scott & Co., 18 Okla. l. c. 271.]

So far as concerns the failure of the contractors to pay claims for labor and materials, the surety company was notified of *that fact* in April and again in June. Again, and before the lien suits had been commenced, the surety was given a verified and itemized statement of the claims for labor and material then due. It refused to act, and these claims were paid, some before and some after judgment in lien suits. No expenses of litigation are sought to be recovered, however.

**Payment for Labor and Materials.**

So far as concerns sums expended to complete the building after the contractors refused to proceed and the surety attempted to wash its hands of the matter, no notice was required. There was no default of the contractors affecting these sums save their general default in failing to complete the building, and of this notice was given before the payments were made.

The question is as to the sufficiency or necessity of notice of the failure of the contractors to pay the material and labor bills except such as plaintiffs paid in completing the building after they took charge.

The contract provided, among other things: "And should there prove to be any such claim after all payments are made, the contractors shall refund to the owner all moneys that the latter may be compelled to pay in discharging any lien on said premises, made obligatory in consequence of the former's default."

In a case very like this, so far as the question under consideration is concerned, it was held (Lakeside Land Co. v. Empire State Surety Co., 105 Minn. 213) that the entire failure to give notice of a failure to complete the work in contract time and of failure of the contractors to pay certain labor and material bills, was not sufficient to absolve the surety.

The court said: "That the strict rule of construction is not applicable with reference to bonds issued by surety companies has become very well settled in the

courts of the United States. A surety company, in the business of issuing bonds of this character, furnishes its own forms, and is presumed to be acting advisedly in the selection of the language used, and the intention of the parties will be ascertained by the rule applicable to insurance contracts. . . . When it fairly appears from the face of the contract what the parties intended, a strict construction of general statements or of particular clauses will not be indulged in to vary the evident purpose to be accomplished by the instrument.''

To the same effect are some of the cases already cited and, also, Heffernan v. U. S. Fidelity & Guaranty Co., 37 Wash. 477.

In view of this rule, it seems evident that the mere failure of plaintiffs to notify the surety of the unpaid claims for labor and materials as each debt was incurred by the contractors could not release the surety. Such claims, in excess of the contract price (such only being involved here), plaintiffs had the right under the contract to pay in order to protect the property, and it was then the duty of the contractor to refund. Of these claims the surety was notified, and then attempted to step out of the matter. Every cent paid went into the building, and the contractors did not refund. This was the actual default under the contract so far as the claims now being discussed are concerned. Of this default the surety company had notice, both from plaintiffs and from the contractors, but refused to act.

The cases of National Surety Co. v. Long, 125 Fed. 887, 60 C. C. A. 623; United States Fidelity & Guaranty Co. v. Rice, 148 Fed. 206; and Beech Grove Imp. Co. v. Title Guaranty & Surety Co., 50 Ind. App. 377, 98 N. E. 373, are not in point for reasons pointed out in Lakeside Land Co. v. Empire State Surety Co., supra.

Many other decisions supporting the conclusions above announced will be found cited in Van Buren County v. American Surety Co., 137 Ia. 490.

The case of Nodaway Drainage District No. 1 v. Illinois Surety Co., 252 Mo. 543, involved a principle thought to be determinative of one important feature of this case. That case was first heard in Division and then transferred to Court en Banc and was very recently decided. In view of the fact that the opinion is concurred in fully by only two judges, the decision is not cited in support of any view in this case but this judgment has been put upon other grounds.

The referee's findings having been approved by the trial court constitute a special verdict (R. S. 1909, sec. 2013), and the judgment is reversed and the cause remanded with directions to enter judgment for the full penalty of the bond, and the amount due, with interest, more than equaling that penalty, the judgment ordered entered is to be discharged only by payment of the sum of $10,000. It is so ordered. *Roy, C.,* concurs.

Reference:
Special Verdict.

PER CURIAM.—The foregoing opinion of BLAIR, C. is adopted as the opinion of the court. All concur.