THE CITY OF NEW HAVEN *vs.* THE EASTERN PAVING BRICK COMPANY ET AL.

Third Judicial District, New Haven, January Term, 1906.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

The Eastern Paving Brick Company agreed to furnish the plaintiff with vitrified brick for street paving, and the Fidelity and Deposit Company of Maryland gave a bond as surety for the performance of "all the terms and conditions of the contract." The agreement provided that all the brick were to be of the "best quality," burned especially for street paving and properly annealed, and that all warped, irregular and defective brick would be rejected. It also provided that the vendor should furnish brick of such quality that no repairs to the pavements made thereof, and due to defective brick, would be required for five years after their completion; and that if during said period any portion of the pavement should, in the opinion of the plaintiff's director of public works, require repairs, because of defective bricks furnished by the vendor, notice should be given to the latter, and if repairs were not begun by the vendor within five days thereafter, the surety should likewise be notified; and in case of a like failure on its part, the plaintiff's di-

rector of public works might purchase such brick as he deemed
necessary and make satisfactory repairs at the expense of the de-
fendants.    In a suit on the bond the complaint, having incorpo-
rated by reference the contract and the bond, alleged that the brick
furnished by the vendor were "imperfect and defective" ; that
within the five-year period repairs became necessary because of
such defective brick; that written notice that such repairs were
required was given first to the vendor and later to the surety, but
that neither of them made any repairs; that thereafter the plain-
tiff's director of public works purchased such brick as he deemed
necessary and made satisfactory repairs to the pavement at an ex-
pense of over $12,000, no portion of which had ever been refunded
to the plaintiff by either of the defendants.    *Held:*—

1. That the failure of the vendor to furnish the quality of brick
   called for by the contract was in itself a breach of the bond, for
   which, if sufficiently alleged in the complaint, the plaintiff was en-
   titled to recover the sum it was compelled to expend in order to
   procure brick of the kind and quality it had ordered.

2. That although this breach might have been more clearly and fully
   set forth, the allegations of the complaint were nevertheless suffi-
   cient, in the absence of any objection by demurrer or otherwise,
   to sustain a judgment for the plaintiff.

3. That the further undertaking of the vendor to furnish such brick
   that the pavement made of them would require no repairs for five
   years, was a guaranty of the character and quality of the brick
   rather than an agreement to maintain and keep the pavement in
   repair for such period.

4. That inasmuch as the pavement did require repairs within said
   period, because of defective brick, the cost of their replacement
   with brick of the size and quality contracted for was properly al-
   lowed as damages to the plaintiff.

5. That the question of when the pavement should be repaired was
   one for the determination of the proper city official, in view of the
   convenience and safety of public travel; and therefore it was not
   requisite, in order to hold the surety liable for expenses incurred
   in making necessary repairs, that the notice to it to repair should
   have been given by the city as soon as it became evident to the
   latter that repairs would have to be made at some future day.

6. That the notice to repair, given by the city to the defendants, con-
   formed to the requirements of the contract.

The finding stated that in the summer of 1901 the director of public
   works "then determined that the pavement should be replaced."
   *Held* that this obviously meant that the director had decided that
   the pavement would have to be replaced at some time, but did not
   mean that he had decided that the repairs should then be com-
   menced, or had then decided when they should begin.

Argued January 28th—decided March 8th, 1906.

ACTION upon two bonds given to secure the performance by the Eastern Paving Brick Company of contracts for pav-. ing-brick, brought to the Superior Court in New Haven County where the Eastern Paving Brick Company failed to appear; the court (*Shumway, J.*) overruled a demurrer to the answer of the Fidelity and Deposit Company of Maryland, the other defendant, and the cause was afterward tried to the court, *George W. Wheeler, J.;* facts found and judgment rendered against the defaulting defendant and in favor of the Fidelity and Deposit Company, from which the plaintiff appealed. *Error, judgment reversed and cause remanded.*

The complaint contains two counts which differ from each other only in that they are upon bonds of different amounts given to secure the performance by the Eastern Paving Brick Company of contracts containing similar provisions, excepting as they are for the furnishing of different quantities of paving-brick for different streets. Each of the bonds is executed by the Eastern Paving Brick Company as principal, and the Fidelity and Deposit Company as surety, one in the penal sum of $10,000 and the other of $2,000 ; and each is conditioned that the Eastern Paving Brick Company "shall well and truly keep and perform all the terms and conditions of said contract on its part to be performed, and shall indemnify and save harmless the said city of New Haven, as therein stipulated."

The contract between the plaintiff and the Eastern Paving Brick Company, made part of paragraph 1 of the first count of the complaint, and for the performance of which the bond of $10,000 was given, contains these provisions, among others: " Said party of the second part (The Eastern Paving Brick Company) has agreed and by these presents does agree with the said party of the first part (the plaintiff), for the consideration hereinafter mentioned and contained, and under the penalty expressed in a bond bearing even date with these presents, and hereunto annexed, to furnish one million (1,000,000) vitrified paving brick known as Catskill Repressed Vitrified Paving Brick, manufactured by The

Eastern Paving Brick Company, in the manner and under the conditions hereinafter specified. . . . All brick furnished will be subject to inspection, and must be of the best quality of vitrified paving brick, burned especially for street paving, and properly annealed. . . . All warped, irregular, and defective brick will be rejected. . . . And the said party of the second part hereby further agrees that it will furnish brick of such quality that no repairs to the pavements constructed of said brick by reason of defective brick used in said construction shall be required for the term of five years after their completion ; and if at any time during the said period any portion of said pavements because of any broken or worn bricks caused by the defective brick used shall in the opinion of the director of public works require repairs, then said director shall notify said party of the second part by a written notice left with the contractor personally, or at his usual place of abode, or his agent in charge of the work ; and if the said party of the second part shall not within five days from the date of the service of said notice commence and proceed to replace said brick and make said repairs to the satisfaction of the director of public works, then said director shall notify the sureties on the bond filed in accordance with this contract ; and in case of a like failure on their part to proceed within five days from the date of the service of said notice to make said repairs in a satisfactory manner, then the said director of public works shall have the right to purchase such brick as he may deem necessary, and to employ such persons as he may deem proper, and to make satisfactory repairs at the expense of said party of the second part, or his sureties. And it is further agreed that at the expiration of said period of five years the work shall be inspected, and all imperfections occasioned or caused by defective bricks shall be corrected, and the pavement put in good condition, upon which the director will accept the same, and until such acceptance the guaranty shall be in force."

The party of the second part further agreed to furnish a bond of $10,000, conditioned upon its faithful performance

of said contract, and to indemnify and save harmless the city from all suits for damages caused by the negligence of said Brick Company in performing its work, or by any improper material furnished.

The city was to pay $14.50 per thousand for the brick, eighty-five per cent. of the amount due for the brick laid each month to be paid on the 15th of the next month, and the remaining fifteen per cent. on the 15th of the next succeeding month.

Paragraph 1 of the first count of the complaint alleges the execution of said contract on the 3d of April, 1900. Paragraphs 2, 3 and 4 allege the execution of the bond of $10,000, to secure the performance of said contract, and delivery by the Brick Company of 1,000,000 brick used in the construction of the pavement of East Chapel Street between East and Ferry streets. Paragraph 5 is as follows: " The said brick so furnished were imperfect and defective, and within the term of five years after the completion of said pavement, namely, on or before March 26th, 1902, repairs were required to the said pavement by reason of the defective brick so furnished and so used, and on or about March 26th, 1902, certain portions of said pavement in the opinion of the Director of Public Works of the City of New Haven required repairs because of broken or worn bricks caused by the defective bricks so furnished and used." Paragraphs 6, 7, 8 and 9 allege the giving of written notice to the Brick Company on the 21st of May, 1902, and to the Fidelity and Deposit Company on the 5th of June, 1902, and the failure of each of them to make the required repairs within five days after receiving such notice. Paragraphs 11 and 12 allege that thereafter, on and prior to the 1st of July, the director of public works purchased such brick, and employed such persons as he deemed necessary for the making of such repairs, and in so doing expended $11,053.29, no part of which has been repaid.

It is alleged in the second count that about 500,000 brick were delivered by the Brick Company to the plaintiff under a contract executed May 31st, 1900, and used by the

latter in laying pavements on Church Street and on Commerce Street, which were completed prior to January 1st, 1900 ; and paragraph 21 of the second count, which corresponds with paragraph 10 of the first count, alleges that the amount expended by the director of public works, in making repairs on Church and Commerce streets, was $1,435.

In its first defense to said counts, the Fidelity and Deposit Company, which alone appeared to defend this action, admits the truth of all the paragraphs of the complaint, excepting paragraph 5 of the first count and the corresponding paragraph 16 of the second count, and also the paragraphs of said counts alleging the expenditure by the director of public works of said sums for repairs, which are denied.

A second defense to both counts, among other averments, alleges that the repairs made were required by reason of the neglect of the plaintiff to notify the defendants that the pavements required repair, until long after the necessity of repairs was apparent to the director of public works, and that said repairs were required by reason of the failure of the plaintiff to make repairs within a reasonable time after the necessity of repairs was apparent to the plaintiff and its director of public works. There was a demurrer to this second defense, which was overruled, the principal questions sought to be raised by which were, however, afterward passed upon in the final decision of the case.

These facts appear from the finding : The paving of East Chapel Street with the brick furnished by the Eastern Paving Brick Company, under the contract of April 3d, 1900, was completed about August 31st, 1900, and of Commerce and Church streets and Whitney Avenue, with the brick furnished under the contract of May 31st, 1900, about August 1st, 1900. " The bricks furnished under the contracts were defective when furnished, and were not such brick as were called for by the terms of said contracts." On East Chapel and Commerce streets the traffic is heavy, and on the former heavy vehicles are customarily driven

with one pair of wheels inside, and the other pair outside, of the trolley tracks, of which there was a double line on said street, and " late in the fall and in the early winter of 1900 the said bricks on East Chapel Street began chipping excessively, especially where the traffic was concentrated." This chipping extended across the top, and went below the central core of the brick and weakened it, and occasionally bricks began to crush. There were complaints of the bad condition of the pavement in the winter of 1900, and by the summer of 1901 the worn holes and depressions became very numerous, and of varying depths, so that the pavement in its central part was in very bad condition. The process of disintegration was a continuing one, and the pavement grew worse until it was taken up. A similar condition, except to a less degree, existed in Commerce Street and Whitney Avenue. " The tendency of a defective brick when worn and broken is to cause other bricks adjoining to wear and break, and the longer the defective bricks thus worn and broken are allowed to remain, the greater the injury to the pavement, and the greater the cost of repair." Of these facts the plaintiff had knowledge.

In the winter of 1900–1901, the city engineer and the director of public works formed the opinion that the bricks furnished were defective and that the pavements were going to disintegrate, but it was then impossible for them to determine that repairs would be useless ; " that, and the proper method of treatment, could only be determined by waiting until the succeeding summer to see how the pavements were standing the traffic."

Paragraph 14 of the finding states that in the summer of 1901 a representative of the Brick Company passed over the Chapel Street pavement and became acquainted with its condition, and that the city engineer and director then determined that " the Chapel Street pavement should be replaced "; and paragraph 15 says that the city engineer, the director, and the manager of the Brick Company went over these pavements in the summer of 1901, and " the city authorities then decided that these brick pavements in these

streets required repairs because of defective brick furnished by the Eastern Paving Brick Company."

March 26th, 1902, the pavements on Chapel, Commerce and Church streets and Whitney Avenue required repair, because of defective, broken and worn brick, and it was then the opinion of the director of public works that such repairs were required; and on said date he wrote the defendant Brick Company that the pavement on Chapel Street would need replacing that spring with suitable paving brick, "the pavement having gone to pieces by reason of the quality of the brick"; that that in Commerce Street for about one block would have to be largely replaced for the same reason, and that in Church Street, between Elm and Sachem streets, it would need repairs; and notified the Brick Company to proceed with the replacing and repairing as early as the weather conditions would permit, "namely, about May 1st." On May 21st, and May 23d, 1902, the director of public works notified the Brick Company, in writing, that because of broken and worn brick which were defective when furnished, the pavement in East Chapel Street needed to be replaced, that in Commerce Street about one block needed to be largely replaced, and that in Church Street, and Whitney Avenue between Elm and Sachem streets, the pavement needed to be repaired; and notified said company to commence and proceed to replace said bricks and make said repairs within five days from the date of the service of said notice.

The Brick Company having failed to replace the brick or make the repairs, on the 5th of June, 1902, the director of public works served a similar written notice upon the defendant Fidelity and Deposit Company, notifying it also of said notice to the Brick Company, and of the failure of the latter to replace the brick and make the required repairs, and that unless said Fidelity and Deposit Company proceeded to make said repairs within five days said director would proceed to make the same at the expense of said Brick Company and of said Fidelity and Deposit Company.

Upon the failure of the surety to replace the brick and make the required repairs, the director of public works, in

the fall of 1902 and the spring of 1903, took up the brick in Chapel Street, between the rails of each track, and on one side for a distance of six feet, and the other four feet from the outer rail, and relaid the pavement with another make and kind of brick; and, outside of said portions thus wholly relaid, took up the bricks in separate spots where there were depressions, and either turned over the brick taken up, or replaced them with brick taken up from other places. Through the middle of that portion of Commerce Street paved by the Brick Company, said director removed a strip of the pavement twelve feet wide and replaced it with " brick of another make." On Church Street and Whitney Avenue only slight repairs were made.

In making such repairs on Chapel Street said director expended $11,653.29, and on Commerce and Church streets and Whitney Avenue, $1,435.

The trial court finds that during the interval after the director of public works had " formed the opinion " that the pavements required repair, and before notice was given to the defendant Fidelity and Deposit Company, the pavement " suffered great injury by reason of remaining in bad condition without repair, and that the cost " of repair was greatly increased by a failure to repair within a reasonable time after the necessity for such repairs became apparent; that had the repairs been made promptly in 1901 the pavements might have lasted, so far as the evidence appeared, through the five-year period named in the contract, or a very substantial part of it; and that the delay in notifying the surety was unreasonable. It is also found that the expense of making such repairs might have been considerably reduced by using brick of the same size as those furnished by the Eastern Paving Brick Company, and that many of the brick taken up by the plaintiff can be used elsewhere.

The plaintiff offered no evidence of any damage except in the making of said expenditures.

*Leonard M. Daggett*, with whom was *Henry C. White*, for the appellant (plaintiff).

*John K. Beach,* and *Alonzo M. Snyder* of Ohio, for the appellee (defendant Fidelity and Deposit Company).

HALL, J.  In rendering judgment for the plaintiff against the Eastern Paving Brick Company for $12,000, and in favor of the Fidelity and Deposit Company for costs, the trial court held that the plaintiff, by reason of the failure to give notice to the surety of the condition of the pavement within the time provided by the contract, and until June, 1902, lost its right to recover of the surety the money so expended by the director of public works in relaying the pavements; but that as to the contractor, whose representative had in 1901 learned, as above stated, of the condition of the pavement, the notice given was reasonable and sufficient.

There was error in the judgment rendered.  This is an action upon a bond, and not upon the contract between the plaintiff and the Eastern Paving Brick Company, to which the Fidelity and Deposit Company was not a party.  The surety is liable if it appears from the facts found that any assigned breach of the condition of the bond has been proved. In considering the evidence in order to determine whether there has been such a breach of condition of the bond, it became necessary for the trial court to examine the various provisions of the contract, but the condition of the bond is found only in the bond itself.  The only condition there expressed, excepting that referring to indemnity against suits, which becomes unimportant since there appear to have been none, is that " the Eastern Paving Brick Company shall well and truly keep and perform all the terms and conditions of the said contract on its part to be kept and performed."  If the facts found show that the Eastern Paving Brick Company has failed to perform its said contract in any material part assigned in the complaint, then the surety upon the bond is, by the terms of the bond and by law, liable for the amount of damages equitably due for such breach of contract (General Statutes, § 768; *Fowler* v. *Mallory,* 53 Conn. 420, 447); not exceeding the amount of the penalty of the bond, with interest.  *Lewis* v. *Dwight,* 10 Conn. 95, 102, 103.

One of the first provisions of the contract is that the brick when furnished must be of a certain manufacture and kind and of the best quality, and that no defective brick will be received. One of the allegations of paragraph 5 of the complaint, which is denied, is that the brick so furnished, namely, the one million brick delivered and laid down in East Chapel Street prior to January 1st, 1901, " were imperfect and defective." Upon this issue the trial court has found that the brick furnished under both contracts " were defective when furnished, and were not such brick as were called for by the terms of said contracts." These facts alone furnish complete proof of a failure of the contractor to perform " all the terms and conditions of said contract on its part to be kept and performed," since it is obvious that the contract cannot be interpreted as meaning that, upon failure of the contractor to furnish brick of the kind and quality described in the first part of the contract, the city would be without remedy unless it gave written notice to the contractor that repairs were required. Upon such proof of such breach of the contract, the plaintiff, under the allegations of the complaint as to the damages it sustained, was entitled to recover, against the surety on the bond, the sum which it proved that in consequence of such breach it was compelled to expend in order to procure brick of the kind and quality so called for by the contract, provided such breach is sufficiently alleged in the complaint. That the contractor failed to furnish brick of the character and quality called for by the contract, might, perhaps, have been more clearly stated, in different language and in separate paragraphs, than it is in the complaint, but paragraph 5, which was denied by the answer, contains these three averments : (1) that the brick so furnished, before January 1st, 1901, were imperfect and defective ; (2) that on or before March 26th, 1902, repairs were required upon the pavement because of defective brick ; and (3) that on March 26th, 1902, certain portions of the pavement, in the opinion of the director of public works, required repairs because of broken and worn brick caused by defective brick ; and this third averment is followed by allegations in the

subsequent paragraphs, of notice to the defendants to repair, of their failure to do so, and of the expense incurred by the city in making the required repairs. Upon the facts found by the court, and in the absence of any question by demurrer, objection to evidence, or otherwise, to the sufficiency of the allegation in question, we are of opinion that the complaint is sufficient to sustain a judgment, based upon the finding that the contractor, independently of its failure to furnish brick of a quality which would not require repairs for five years, failed to furnish brick of the kind and quality called for by the contract.

Another undertaking of the contractor in said agreement was to furnish brick of such a quality that the pavement constructed of them would require no repairs, on account of defective brick, for a period of five years after its completion. This is a guaranty of the character and quality of the brick rather than an agreement to maintain the pavement and keep it in repair for a certain period. *Kansas City* v. *Hanson*, 60 Kan. 833, 837 ; *Schenectady* v. *Union College*, 66 Hun (N. Y.) 179, 188. A breach of the condition of the bond, in the failure of the contractor to perform this provision of his contract, is assigned in the complaint, by the averment in paragraph 5, that within five years from the completion of the pavement repairs were required by reason of defective brick. As supporting this second allegation of breach, the court has found that the pavement required repairs, because of defective brick, during the named period, if indeed it has not found that at least upon certain of the streets it became necessary, because of the insufficient quality and strength of the bricks which were furnished and laid, to replace them with brick of another kind and make. If the subsequent provision of the contract, concerning notice to the defendants of required repairs to any portion of the pavement by reason of broken or worn brick, was not intended to apply to a replacement of the brick such as was actually made, the plaintiff, either under this second averment of breach, or under the first allegation of breach above referred to, was entitled, upon the facts found, to recover,

as damages, the alleged expense incurred in such replacement of the brick as was rendered necessary on account of defective brick.

The third alleged breach of contract is the failure of the Eastern Paving Brick Company to pay to the plaintiff the sum alleged to have been expended by the director of public works in making repairs during the five-year period. That such a breach has been proved is denied, mainly, if not wholly, upon the ground that the facts show that the director of public works failed to give to the defendants, or at least to the surety on the bond, notice that repairs were required within the time provided in the contract. When such notice was to be given must be determined by the meaning to be ascribed to the language of this particular provision. The question is, do the words " if at any time during the said period any portion of said pavements because of any broken or worn bricks caused by the defective bricks used shall in the opinion of the director of public works require répairs, then said director shall notify said party of the second part by a written notice," etc., provide for a notice for the benefit of the defendant, and mean that the notice was to be given when, in the opinion of the director of public works, any part of the pavement was out of repair by reason of defective bricks and needed repairing for the purpose of protecting the rest of the pavement and preventing any unnecessary increase in the expense of repairing which might be caused by delay ; or do these words mean that such notice was to be given when, in the opinion of the director of public works, the interests of the public and the convenience and safety of public travel required that the work of repairing the defects should be commenced. The defendants contend that the notice provided was for their benefit, and that the language of the provision should be interpreted as first above suggested. This view seems to have been adopted by the trial court. We think, however, that the latter meaning is the correct one, and that it was intended that the notices were to be given when the director of public works decided that, in the interest of the public and for the safety of

public travel, the work of making the required repairs must be commenced. As the Fidelity and Deposit Company signed this bond as a part of the business in which it is engaged for a profit, this contract is not to be interpreted under any rule which favors a construction more beneficial to a volunteer surety. *Supreme Council C. K. of A.* v. *Fidelity & Casualty Co.*, 63 Fed. Rep. 48, 58.

The provision requiring notice to the defendants, as a condition precedent to the plaintiff's right to recover expenditures for repairs, was for the benefit of the defendants only in so far as it gave them the privilege of making the required repairs themselves at a possibly less cost than if made by others. It was for the benefit of the city in enabling it to cause repairs necessary for the safety of public travel to be made at the time when, in the opinion of the proper city official, they could best be made and should be made, and to enable the city, in case the defendants failed to make them upon notice, to immediately make them itself, and recover, as damages for the defective brick furnished, the full sum properly expended by it in making the repairs required. The director of public works was evidently named as the person to determine when such written notice should be given to the defendants, because, under the city charter, he was the person who was responsible for the care, management and repair of all the streets of the city. 12 Special Laws, p. 1136, § 76. He was to have the same control over these streets, the pavement for which was to be furnished by the contractor, as over the other streets of the city, and was to decide when, upon these streets as upon others, the conditions were such that public necessity, not the protection of the defendants' interests, required that the work of repairing should be commenced, and that for that purpose public travel should be obstructed or suspended. What the defendants were to be notified of, by the director of public works, was that the time had come when, in his opinion, these streets must be repaired on account of defective brick in the pavement, and that the work of making the repairs must be commenced within five days from the date of the

service of the notice or it would be done by the city at the defendants' expense. The director of public works decided that these repairs must be made in the spring or summer of 1902, and notices were then for the first time served upon the defendants, requiring them to proceed with the work of repairing within five days. It does not appear that the director of public works had before that time decided when the work of repairing should be done, or that he did not act in good faith and in the proper discharge of his official duties in deciding that the spring and summer of 1902 was the time when the work of making the repairs should be commenced.

Obviously the finding of the trial court, that in the summer of 1901 the director of public works " then determined that the Chapel Street pavements should be replaced " and " the city authorities then decided that these brick pavements . . . required repairs because of defective brick," means that the director then decided that the Chapel Street pavement was out of repair and would have to be replaced with other brick, and that the pavements needed repairs, and not that he then decided that the replacement and repairing should then be commenced, or that he then decided when the work of replacing and repairing should be commenced.

The notices given by the director of public works to the defendants in 1902 were in conformity to the requirements of the contract.

Upon the allegations of the complaint and the facts found, the plaintiff is entitled to a judgment against both defendants for the sums found, in paragraph 25 of the finding, to have been expended by the director of public works in making the required repairs, less such sum as may be found to have been unnecessarily expended by the plaintiff in making such repairs by purchasing brick of a different size from those which were to be furnished under the contract, and less such further sum as may be found to have been the fair value of any bricks which were taken up and not used in making the repairs, and were appropriated by the city, with interest upon such remainder.

There is error; the judgment in favor of the defendant

Fidelity and Deposit Company is reversed, and the case remanded with directions to find the amounts above named, to be deducted from the said amount of expenditures for repairs, and, after having deducted said sums, if it be found that there are any such sums to be deducted, to render judgment for the plaintiff against both defendants for the remainder of the amount of said expenditures, not exceeding on each count the amount of the penalty of the bond described in such count, with interest on such remainder.

In this opinion the other judges concurred.