TOWN OF BROOKFIELD *v.* GREENRIDGE, INC., ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

528

Argued February 6—decision released May 15, 1979

*Harry Cohen,* with whom, on the brief, was *Murray Kessler,* for the appellants (defendants).

*Francis J. Collins,* with whom was *Donald A. Mitchell,* for the appellee (plaintiff).

PETERS, J. This case arises out of the failure of the defendant Greenridge, Inc., to complete certain road and drainage improvements on approved subdivision plats in accordance with town specifications. The plaintiff town of Brookfield sought damages against Greenridge, in the first count of a two-count complaint, for its failure to complete the

improvements. The second count was against Greenridge as principal and Travelers Insurance Company as surety on a performance bond posted by both defendants in connection with the subdivision approval. The court found the issues for the plaintiff on both counts and rendered judgment against Greenridge on the first count for $38,000 plus interest at 6 percent from January 1, 1971, and against Travelers on the second count for $15,000, to be applied toward the damages awarded in the first count. From this judgment both defendants have appealed to this court.

The relevant facts may be summarized as follows. On November 9, 1965, the plaintiff, acting through its planning commission, gave its approval to the defendant Greenridge for two subdivision plats known as Plat A and Plat B. Subdivision approval called for the completion of Plats A and B in accordance with the requirements of the town of Brookfield subdivision regulations and road regulations. In accordance with the subdivision regulations, Greenridge as principal and Travelers as surety executed and delivered to the planning commission a surety bond in the amount of $40,000 to secure the completion of certain road improvements, as authorized by § 8-25 of the General Statutes. The bond did not specify a date for completion of the improvements. There was no formal contract or written agreement between the town and Greenridge relating to the construction of the roads other than the obligations of the parties implicit in the subdivision approval and in the posting of the aforesaid bond.

The roads in Plat A were accepted by the town and are not at issue in this appeal. The roads in Plat B, which remain at issue, were accepted by the

town at a town meeting in December, 1969, "collectively and at such time as the Board of Selectmen shall have approved the conditions of the roads."[1] Shortly thereafter, the board of selectmen reduced the amount of the surety bond to $15,000 because a major portion of the subdivision roads had been accepted and the selectmen believed the reduced amount was sufficient to insure completion of repairs.

The bituminous concrete surfaces of the roads in question began breaking up in 1966, shortly after the roads were constructed. The court found that the cause of the deterioration of the roads was primarily the lack of underdrain. Other problems discovered with the roads were the application of a bituminous concrete surface of substandard thickness and an insufficient amount or, in some cases, total lack of gravel subbase. As a result of the problems discovered, the plaintiff's selectmen never incorporated the roads in Plat B into the town's highway system, and no deed to the roads was ever accepted or recorded by the selectmen.

This appeal raises three issues: (1) Did the trial court err in holding the defendant Greenridge liable in damages to the plaintiff for failure to complete certain road improvements, in particular the installation of underdrain, in the defendant's subdivision plat? (2) Is the liability of the defendant Greenridge for defective performance, if any, limited to the amount of the surety bond? (3) Can the amount of the judgment be upheld when the findings do not indicate any monetary basis for the judgment?

---

[1] The trial court determined that this town meeting, insofar as it purported to accept the roads in Plat B subject to the approval of the board of selectmen, was a nullity as it constituted an illegal delegation of legislative discretion. See the discussion of the effect of this conclusion, infra.

As a preliminary matter, we must consider the numerous attacks on the finding made by the defendants. The defendants seek to add several paragraphs of the draft finding which they claim to be admitted or undisputed. We have examined each of the paragraphs sought to be added to the finding and conclude that the finding is not subject to material correction. Many of the facts claimed to be admitted or undisputed have been included, implicitly or explicitly, in the finding, and the remaining facts would not alter the conclusions of this court. See *E & F Realty Co.* v. *Commissioner of Transportation,* 173 Conn. 247, 248–49, 377 A.2d 302 (1977). The defendants have also attacked several paragraphs of the finding as found without evidence. In each case, the plaintiff in its brief and appendix has referred us to evidence supporting the challenged finding, and the findings must therefore be sustained. *Slattery* v. *Maykut,* 176 Conn. 147, 149, 405 A.2d 76 (1978). The remaining assignments of error, insofar as they are briefed and argued, relate to the court's conclusions of law and the overruling of the defendants' claims of law, and will be treated in the discussion of the main issues on appeal.

I

The first issue concerns the liability of the defendant Greenridge for its failure to complete road and drainage improvements in the roads in Plat B. Greenridge argues that it had no responsibility to install underdrain on the roads in question because underdrain was not specifically referred to in the town's road specifications, nor indicated on the plats, and that the plaintiff is attempting to impose a contract for the construction of drainage where none existed. The defendants' argument rests on the fact

that subdivision approval called for conformance with the town's subdivision regulations, section 9.1 of which provides: "In all subdivisions adequate provision shall be made for storm drainage *according to the filed map.*" (Emphasis added.) The defendant Greenridge asserts that since the requirement of underdrain was not specifically indicated on the filed map, nor spelled out in the road specifications, it was not required to provide any underdrain in the process of road construction.

The defendants' argument cannot survive their own concession and the court's finding that underdrain is an integral part of road construction, basic to proper road building wherever wet field conditions exist. The court's finding indicates that installation of underdrain is not a common specification for road construction because it is not needed for every road, but is necessary for proper construction when such wet field conditions are discovered. Moreover, unchallenged findings reveal that town selectmen informed representatives of Greenridge that underdrain was required on roads shown on approved maps, and that Greenridge did in fact install some underdrain on at least one of the roads in Plat B. The defendants' citations to the "general rule" that a planning board, having given approval to a subdivision plan, cannot thereafter attach supplementary conditions to such approval; see 4 Rathkopf, The Law of Zoning and Planning, c. 71, p. 71-99 (1978); 3 Anderson, American Law of Zoning, § 19.25, p. 444 (1968); are inapposite. It can hardly be maintained that insistence upon proper road construction in accordance with the then current standards of the industry; see State of Connecticut Highway Department, Manual of Administration and Operation—Volume III: Construction (Rev. 1962),

pp. 93–94; constitutes a new term or condition. The facts set forth in the finding amply support the court's conclusions that Greenridge failed to meet all the requirements of the subdivision regulations because the roads were not constructed in accordance with its implied obligation to conform with good road building practice, and that the plaintiff's damages resulted from this failure to install proper roads.

Greenridge further claims that even if it was initially responsible for its failure to install adequate underdrain, the town meeting of December 1969 validly and finally accepted the roads in Plat B, despite the expressed intention that acceptance should be final only upon the board of selectmen's approval of the conditions of the roads. It is true, as the defendants point out, that the court found the town meeting to be a nullity as it constituted an illegal delegation of authority to the selectmen,[2] but the defendants' contention that the action of the town meeting was only a *partial* nullity, invalidating the delegation to the selectmen but not the acceptance of the roads, cannot be sustained. Acceptance of municipal highways under § 13a-48 of the General Statutes is an exercise of legislative discretion that may not be delegated. *Thompson* v. *Portland,* 159 Conn. 107, 115, 266 A.2d 893 (1970); see *Baker* v. *Kerrigan,* 149 Conn. 596, 600, 183 A.2d 268 (1962). Application of that principle in this case results in annulling the entire action of the town meeting, not merely the delegation to the board of selectmen; see 1 Antieau, Municipal Corporation Law, § 5.32 (1979); and therefore cannot result in the acceptance of the roads.

---

[2] See footnote 1, supra.

The defendants also contend that two actions of the selectmen resulted in the acceptance of the roads: the listing of certain roads in the subdivision in the state aid inventory, rendering them eligible for town aid participation by the then state highway department; and the provision of maintenance on the roads in Plat B, including oiling, sanding, and plowing for the convenience of the residents. The first of these contentions can be quickly answered, since the subdivision roads listed in the state aid inventory were the roads in Plat A, which are not in issue in this case. The second contention is equally without merit. The defendants argue that the maintenance of the roads in question amounted to a "common law acceptance" of the roads by their dedication to public use. Although a municipality that repairs, maintains, or improves a road may be estopped to deny its responsibility to one who sues to recover damages for personal injuries caused by a defect in the road; *Kenneson* v. *Bridgeport*, 130 Conn. 298, 33 A.2d 313 (1943); it is not in the same manner estopped from seeking damages from the builder for improper construction. We have held, under similar circumstances, that when a developer has failed to improve highways in a manner acceptable to municipal authorities, "[i]t is not permissible to circumvent the mandate of the statutes by a claim of common-law dedication." *Thompson* v. *Portland*, supra, 115.

## II

The second issue briefed by the defendants concerns the surety bond. In this connection, the defendants argue first that the bond is illegal and unenforceable because it does not specify a completion date for the improvements, and second that if the

bond is enforceable, it determines and delimits the liability of Greenridge.[3] The defendants point out that General Statutes § 8-25 authorizes the town planning commission to "accept a bond in an amount and with surety and conditions satisfactory to it securing to the municipality the actual construction and installation of such improvements . . . *within a period specified in the bond.*" (Emphasis added.) The absence of a specified time period in the bond in question is alleged to be fatal to the enforceability of the bond by keeping it in effect "forever." We cannot agree. Since the bond was furnished by the defendants, it must be interpreted most strongly against them. *Greenwich Contracting Co.* v. *Bonwit Construction Co.,* 156 Conn. 123, 129–30, 239 A.2d 519 (1968); *Dorne* v. *Williams,* 140 Conn. 193, 201, 98 A.2d 796 (1953). "When a bond is issued to comply with a statutory condition precedent to any transaction with a public authority . . . the language of the bond . . . is to be interpreted in the light of the statute and with a view to effectuating the legislative intent. [Citations omitted.]" *Metropolitan Casualty Co.* v. *Billings,* 150 Conn. 603, 607, 192 A.2d 541 (1963). The bond in this case is for the protection of the public rather than for the benefit of the surety, and in the absence of a specific period for performance, a reasonable period will be presumed. *Benassi* v. *Harris,* 147 Conn. 451, 458, 162 A.2d 521 (1960). By any standard, a reasonable time for completion of the improvements secured by the surety bond has long since passed.

Greenridge next argues that if the bond is enforceable, its liability cannot exceed the reduced amount of the bond. Greenridge relies on § 52-238 of the

---

[3] The liability of Travelers is concededly limited to $15,000, the reduced amount of the bond.

General Statutes, which limits the amount of judgment in an action on a penal bond to the amount of the bond plus interest.[4] Reliance on § 52-238 in this case is misplaced. The statute clearly provides that "[i]n any action on a penal bond," when the principal fails to perform all the terms and conditions of the bond, the amount of the judgment for damages cannot exceed the amount of the penalty plus interest. *New Haven* v. *Eastern Paving Brick Co.*, 78 Conn. 689, 698, 63 A. 517 (1906). In this case, count two of the complaint was an action on the bond, and on that count the court properly limited the damages to $15,000. The first count, however, was not an action on the bond and was therefore not subject to the limitation contained in § 52-238. See *New Haven* v. *Eastern Paving Brick Co.*, supra. The contract for bonding did not supersede the agreement by Greenridge, in return for subdivision approval, to complete Plats A and B in accordance with the requirements of the town subdivision regulations and road regulations, and for breach of this agreement the defendant may be held liable inde-

---

[4] "[General Statutes] Sec. 52-238. DAMAGES IN ACTIONS ON PENAL BONDS. In any action on a penal bond, containing any condition which has been broken, such damages only shall be assessed as are equitably due, and judgment shall not be rendered for the whole penalty, unless it appears to be due. If, upon a bond with conditions the breach of which may happen at different times, a suit is brought upon the first breach, the court, upon the forfeiture of such bond found, shall render judgment for what is due in equity at the time, with costs, and award execution; and, upon any further or other breach of condition, the obligee, his executors or administrators may take out a scire facias against the obligor, his executors or administrators, from the clerk of the court in which the judgment was given, to show cause why execution should not be awarded for the money then due, or damages then sustained; and the court shall render judgment for what appears to be due in equity and grant execution thereon, and so, from time to time, until the condition is fully performed; but the whole amount of such judgment shall not exceed the penalty of the bond with interest."

pendent of the contract of suretyship. Cf. *Stoneham v. Savelo,* 341 Mass. 456, 170 N.E.2d 417 (1960); *City of Bellefontaine Neighbors v. J & J Realty & Building Co.,* 460 S.W.2d 298 (Mo. App. 1970).

## III

Finally, the defendants claim that the amount of the judgment cannot stand because the findings and conclusions reached by the trial court do not provide any evidentiary basis for the monetary award. With this contention we must agree. The court correctly concluded that the plaintiff's damages should be in an amount that would leave the town in the same position as it would have enjoyed had Greenridge fully performed; *Bertozzi v. McCarthy,* 164 Conn. 463, 468, 323 A.2d 553 (1973); and that the cost of completion or correction by a third party is in this case the proper measure of such damages. The findings, however, do not sufficiently disclose evidence of the cost of completion or correction. While "damages may be based on 'reasonable and probable estimates,' *Kay Petroleum Corporation v. Piergrossi,* 137 Conn. 620, 624, 79 A.2d 829 . . . it is equally clear that damages must be based on evidence." *Bertozzi v. McCarthy,* supra. The plaintiff in its appendix has referred us to considerable evidence in the transcript concerning the cost of correction as of 1975, but this evidence is not reflected in the findings. Nor does the fact that the court made an on-site inspection of the roads in dispute fill this gap in the findings. Evidence obtained by the court during such an inspection can properly be taken into account in making findings and conclusions concerning the *condition* of the roads, in the same manner as information presented by witnesses; *Saphir v. Neustadt,* 177 Conn. 191,

199, 413 A.2d 843 (1979); but such an inspection does not provide evidence of the monetary value of the repairs needed to correct the defects thus discovered.

Furthermore, the probative value of evidence concerning the cost of correction in 1975 is doubtful until the date of the breach has been determined. Damages in this circumstance must be determined as of the time of the breach; *Gordon* v. *Indusco Management Corporation,* 164 Conn. 262, 274, 320 A.2d 811 (1973); and the court's conclusion that "January 1, 1971, is a reasonable time by which Greenridge, Inc. should have completed the road improvements required under the subdivision approval given December 9, 1965" is unsupported by the findings or by the evidence.

For these reasons, there must be a retrial limited to the issue of the date the breach occurred, and the consequent damages sustained by the plaintiff on that date.

There is error in part, the judgment is affirmed except as to the amount of damages awarded and a new trial is ordered limited to that issue.

In this opinion the other judges concurred.