[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action alleging in the first count of the CT Page 3776 complaint a breach of contract to construct a paved driveway and parking area and in the second count violations of the Connecticut Unfair Trade Practices Act (CUTPA) arising out of the same contract.
FACTS
In 1986 the plaintiffs, Bruce P. and Teresa J. Larue, owners of a four apartment, residential building, located at 146 Union Street in the Rockville section of the Town of Vernon, had a dirt driveway and rear parking area prepared for use by the tenants at that property. The driveway was covered with traprock and small stone and provided access from the rear parking area to Union Street, also known as Route 74, a state highway.
Because snow removal proved difficult, the plaintiffs wanted to pave both the drive and parking area. Early in 1989, they obtained estimates for such construction from four or five contractors. The plaintiffs selected the defendant Warren G. Hoar, d/b/a G H Construction Co., to perform this work. On July 29, 1989, the defendant and Mr. Larue signed a written agreement. (Plaintiffs' Exhibit A and Defendant's Exhibit 1).
The agreement required the defendant to cut out the driveway, parking area, and turn-around; to prepare and provide the base for the paving material; to pave the areas; to remove a tree stump; to remove a concrete sidewalk which adjoined the building; and to regrade the soil adjacent to the areas to be paved. The defendant guaranteed the work for one year. The price of the project was fixed at $5,000.00, payable in three installments. The first installment of $1,666.00 was to be paid as a down payment. The agreement fails to specify a starting or completion date.
On September 2, 1989, the plaintiffs paid the down payment of $1,666.00 to the defendant. (Plaintiffs' Exhibit B). When the defendant failed to contact the plaintiffs for a few weeks following payment, Mrs. Larue attempted to phone the defendant. After five or six unsuccessful tries, she finally spoke to the defendant. He assured her he would be commencing work shortly.
In early October 1989, the defendant and/or his crew CT Page 3777 excavated the areas to be paved. The tree stump was removed, as was the concrete sidewalk. Some grading of the slopes adjacent to the areas to be paved was also done. During the second day of work, Ronald Taft, a senior engineering technician for the Town of Vernon, happened to observe the work underway. He realized that no town permit, required before such work would lawfully proceed, had been obtained. He was also familiar with the defendant and knew the defendant was not bonded or insured to do such work. Further, because the driveway was to provide access to a state highway, a permit from the Department of Transportation was also necessary.
The town and state ordered the defendant to cease work until such permits were obtained. Mrs. Larue was contacted by D.O.T. and notified of the stoppage order. She immediately went to the property, observed the progress of the work, and spoke to the local officials regarding the problem. She made several phone calls to the defendant's residence before reaching him about one week later. In the interim, heavy rains began to erode the freshly moved earth which washed across the public sidewalk, Union Street, and entered the municipal sewer system.
The defendant agreed to spread hay over the construction site and informed Mrs. Larue that because he worked with another contractor, who was bonded and insured, the necessary permits would be obtained soon. After several more phone calls by Mrs. Larue to the defendant's home, she was told that the permit application would be mailed to her home for signature. When the application did not arrive, Mrs. Larue again called and was told by the defendant's secretary that the application was prepared, and she could come to pick it up in person if she wished.
On or about October 12, 1989, Mrs. Larue drove to the defendant's residence in Bolton where she received the application. This application was purportedly prepared on behalf of and signed by F.J. Fiano, Jr. (Plaintiffs' Exhibit C). Mrs. Larue took the application to her husband's place of employment so that he could also sign the form. She then drove to the DOT office in Rocky Hill to file the application.
Upon filing the application, Mrs. Larue was informed that Fiano also was no longer bonded nor insured, and the application was not acceptable. Distraught, Mrs. Larue returned to her residence in Wethersfield. That evening she called F.J. Fiano, Jr., to inform him of what had happened. He, in turn, informed her that he knew nothing of the CT Page 3778 application, and his purported signatures were forgeries. The defendant submitted no evidence contradicting this statement.
Despite numerous attempts by the plaintiffs to contact the defendant, the defendant never returned to the property. No portion of the down payment was returned to the plaintiffs.
By October 1990, the plaintiffs engaged another contractor who paved the driveway only and spread stone dust over the rear parking area for $2,800.00. No evidence was introduced regarding the reasonable cost of paving the parking area. During the year which passed between the defendant's cessation of work and the paving by the new contractor, the dirt driveway frequently washed out and became rutted. This situation generated complaints from the plaintiffs' tenants and required occasional repair.
From July 1987 to October 1, 1988, the defendant was a registered home improvement contractor under the provisions of the Home Improvement Act found in Chapter 400 of the General Statutes. However, he failed to renew his registration certificate and his registration lapsed. He re-registered on October 27, 1989, but at the time he negotiated the contract and did work at the site he was unregistered.
LAW
With respect to the the first count of the complaint, the Court concludes that the defendant breached his agreement with the plaintiffs to install a paved driveway and parking area. The Court finds that the defendant failed to complete the job after state and local officials ordered the work stopped until the defendant obtained the necessary permits. The defendant simply abandoned the project once the permit issue arose. While the contract contained no definite starting or completion date, the defendant's own estimate of the time needed to complete the work, as indicated on the application for the state permit, was one week. (Plaintiffs' Exhibit C). The Court finds that by the end of October 1989 the defendant had breached the contract.
The defendant contends that, even if he had breached the agreement, the plaintiffs have failed to prove they are entitled to recover monetary damages as a result of his failure to complete the job. The general rule regarding damages arising from a breach of contract is "the amount necessary to put the plaintiff in the same position as he CT Page 3779 would have been in if the defendant had met his contractual obligation. . . ," Dooley v. Leo, 184 Conn. 583 (1981), p. 587. More specifically, the proper measure of damages for failure to complete a construction project is "the cost of completion or correction by a third party." Brookfield v. Greenridge, Inc., 177 Conn. 527 (1979), p. 537.
In the instant case, the plaintiffs introduced evidence to show that they paid $2,800.00 to a third party to pave the driveway and to spread stone dust over the parking area. They proffered no evidence with respect to the cost of completing the entire paving project, however. Additionally, no evidence was introduced as to whether the spreading of stone dust is a preliminary step necessary for the eventual paving of the parking area or merely a temporary solution to the parking problem.
The plaintiffs urge the court either to extrapolate from the cost of the partial paving to arrive at some figure as to the cost of the entire project or to order restitution of the $1,666.00 down payment. Where exactness is not possible the "best approximation to certainty is all that is required." Southern New England Construction Co. v. State,165 Conn. 644 (1974), p. 661. Damages may be based on reasonable or probable estimates, Brookfield v. Greenridge, Inc. supra; and "mathematical exactitude" in the proof of damages is often impossible, Dooley v. Leo, supra. But damages must be based on evidence and not speculation, Brookfield v. Greenridge, Inc., supra.
It is "incumbent upon a plaintiff in a contract action to prove his damages with all the certainty which is reasonably possible," Southern New England Contracting Co. v. State, supra. The Court sees no reason why the plaintiffs could not have obtained, with reasonable facility, estimates from other contractors or experts regarding the cost of completion of the paving. The facts in the subject case do not approach the complexity which confronted the trial court in the case just cited.
As to ordering as damages restitution of the down payment, it should be noted that the plaintiffs are not claiming rescission of the contract. While restitution may be the correct damage award where recission is sought and ordered, it is not the proper measure of damages for a breach of contract claim for failure to complete a construction project. That measure of damages is set forth in Brookfield v. Greenridge, Inc., supra; and Levesque v. D M Builders, Inc., 170 Conn. 177 (1976), p. 181. CT Page 3780
Therefore, the Court holds that the plaintiffs have failed to prove they are entitled to recover monetary damages under the first count of the complaint.
 II
As to the second count of the complaint,
 "a party seeking to recover damages under CUTPA must meet two threshold requirements. First, he must establish the that conduct at issue constitutes an unfair or deceptive trade practice. . . . Second, he must present evidence providing the court with a basis for a reasonable estimate of the damages suffered,"
A. Secondino Son, Inc. v. LoRicco, 215 Conn. 336 (1990), p. 343. "While CUTPA damages need not be proven with absolute precision, the failure to present any evidence concerning the nature and extent of the injury sustained precludes recovery," Ibid, p. 344.
The Court finds that the plaintiffs have produced ample evidence proving a variety of unfair trade practices under Conn. Gen. Stat. Sec. 42-110b. The Home Improvement Act, in Conn. Gen. Stat. Sec. 20-247(b), deems any violation of that Act to be, per se, an unfair trade practice under CUTPA. It is undisputed that the contract in the case sub judice falls within the definition of a "home improvement contract" under Conn. Gen. Stat. Sec. 20-419(5), and that, at the time of the agreement, the defendant was a "contractor" as defined by Conn. Gen. Stat. Sec. 20-419(3).
This Act requires home improvement contracts to contain starting and completion dates, Conn. Gen. Stat. Sec.20-429(a)(7). The contract prepared by the defendant for this job did not provide such dates. The Act also requires the contract to be entered into by a "registered contractor," Conn. Gen. Stat. Sec. 20-429(a)(8). The Court has found that the defendant was not so registered on July 29, 1989. The Act also forbids anyone from offering or making any home improvements without possessing a current certificate of registration, Conn. Gen. Stat. Sec. 20-247(b)(5), and the defendant offered to make such "improvements," as defined by Conn. Gen. Stat. Sec. 20-419(4), by offering to construct or improve the plaintiffs' driveway and parking area at 146 Union Street, a "private residence" under Conn. Gen. Stat. Sec. 20-419(8).
Under Conn. Gen. Stat. Sec. 42-110g, any person who CT Page 3781 suffers any "ascertainable loss of money or property" as a result of an unfair trade practice under Conn. Gen. Stat. Sec. 42-110b may recover actual damages, punitive damages, necessary or proper equitable relief, reasonable attorney's fees, and costs. The defendant claims that the plaintiffs have failed to sustain their burden of proving CUTPA damages by a preponderance of the evidence as required by A. Secondino Son, Inc. v. LoRicco, supra. The Court disagrees.
Because he was unregistered at the time, the defendant should not have offered to do the work for the plaintiffs under the Home Improvement Act. Presumably, had another, properly registered contractor, been awarded the job the problem with the lack of permits would never have occurred. The condition of the plaintiffs' property when the defendant ceased work on it was worse than before he began. The defendant's excavation removed the traprock covering the driveway. This removal exposed the drive to frequent and damaging erosion and rutting.
In sum, the plaintiffs paid $1,666.00 only to have their property left in worse condition than before the defendant commenced work. The Court finds that the plaintiffs' have proven actual damages in an ascertainable amount of at least $1,666.00.
As to the first count of the complaint, the Court finds for the defendant. As to the second count, the Court finds for the plaintiffs and awards actual damages of $1,666.00, reasonable attorney's fees of $1,000.00, plus costs.
BY THE COURT, HON. SAMUEL SFERRAZZA SUPERIOR COURT JUDGE