[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action brought by plaintiff Town of Southington ("the town") against defendant Commercial Union Insurance Company ("Commercial Union") for payment under a performance bond which defendant had posted as surety. The action was brought in four counts: Breach of Contract, Negligence, Promissory Estoppel, and Instrumentality/Identity. A trial to the court was held during a four-day period from September 30, 1997 through October 7, 1997. The court finds the following facts. CT Page 377
In 1986 and 1987 Michael J. Martinez was doing business under the name AMI Industries, Inc. ("AMI"). He was the president, sole director, and sole shareholder in said company. During that period he negotiated to purchase an eleven-lot industrial subdivision of real property located at Captain Lewis Drive located in the Town of Southington. Pursuant to that end on June 10, 1988 AMI applied to the Planning and Zoning Commission of Southington for subdivision approval (Plaintiff's Ex. 1). The application was signed by Craig Winter, one of the engineers employed by AMI.
On October 4, 1988, and by letter dated October 17, 1988 to AMI the Planning and Zoning Commission approved the application subject to furnishing a $590,000 Subdivision Bond, and/or a Public Improvement Bond (Plaintiff's Ex. 2). The town's approval of the subdivision was for seven years according to Connecticut General Statutes § 8-26c(d) which provides in pertinent part: ". . . (a)ny subdivision approval made under this section on or before October 1, 1991, shall expire not more than seven years from the date of such approval . . ." Thus such subdivision approval was for seven years or until at least October 3, 1995.
On October 13, 1988 a letter was sent to AMI by the town engineer in regard to the AMI Subdivision #895. It supplies a breakdown of the $590,000 bond requirements for the subdivision. (Plaintiff's Ex. 3). This information was sent to Commercial Union.
Subsequently on November 1, 1988 the subdivision bond was signed by Michael J. Martinez as principal and Commercial Union Insurance Company as surety. (Plaintiff's Ex. 4). The bond concerns the 11-lot subdivision on Captain Lewis Drive — Subdivision No. 895, the same subdivision for which AMI had sought subdivision approval in Exhibit 1 and referred to in Exhibits 2, 3, 10, 13, 14, 15, 16, 17, 18, 19, 20, 22, 24.
In accordance with its terms, the bond dated November 1, 1988 was issued "to insure the completion of the installation of drainage, road, utilities, and other improvements to 11 lot subdivision on Captain Lewis Drive-Subdivision No. 895". The bond provides ". . . that if the above bounden principal shall within two (2) years from the date of recording of said plat, make the aforesaid improvements as required by the Town of Southington, Connecticut then this obligation to be void; otherwise, it shall remain in full force and effect." Commercial Union as surety CT Page 378 received an $11,850 premium to assume the risk contained in the bond.
On February 8, 1989, after the bond was posted, title to the land in question was acquired by MJM Land Industries, Inc. ("MJM"). (Plaintiff's Ex. 6). MJM had been formed prior to posting the bond, and Martinez was the president and sole stockholder of said corporation. (Plaintiff's Ex. 5).
After MJM acquired title to the property, Martinez, acting through either MJM or AMI, proceeded to construct certain road improvements secured by the bond. In November or December of 1990, because some of the improvements had been made, the town reduced the principal amount of the bond from $590,000 to $357,000. (Plaintiff's Ex. 17).
By April 1995 Martinez and/or MJM and/or AMI had failed to complete the improvements as required under the subdivision approval. Thus, by letter dated April 7, 1995 the town informed ITT Hartford (which as of January 2, 1991 "began acquiring and/or servicing the surety bond business of Commercial Union Insurance Companies." (Plaintiff's Ex. 15)) that a large number of improvements had not been satisfactorily completed. In that letter it stated that the completion date for the project was October 1995 and that if the matter was not resolved prior to October 1995 the town would have no choice but to call the bond. (Plaintiff's Ex. 13). The court finds that Commercial Union never paid the town the amounts due on the bond despite the fact that Commercial Union acknowledged its continuing liability under the bond as late as May 1, 1992. (Plaintiff's Ex. 10). Because the matter was not resolved and the improvements were not made the town called the bond (see paragraph 11 of defendant's answer) and commenced this action on June 19, 1995, several months prior to October 3, 1995. The court finds that the cost of completing the improvements to be $175,000, the amount which the town is seeking.
It is clear to this court that AMI was required to post the bond; that Martinez was the president, sole shareholder and director of both AMI and MJM; that Commercial Union issued the bond to the town for the purposes contained in it; that the improvements were not completed; that the town called the bond and brought action within seven years from the date of approval; and that Commercial Union never paid the town the proceeds of that bond. Commercial Union claims it is not obligated under the CT Page 379 bond, however, because the bond was signed by Michael J. Martinez as principal. Clearly, Martinez was well known to Commercial Union as a contractor and Commercial Union knew he was operating his affairs through AMI. (Plaintiff's Ex. 22).
The court finds that Commercial Union is obligated under the bond for the following reasons:
1). Martinez and Commercial Union jointly and severally bound themselves, their heirs, executors, administrators, successors and assigns, to the town for the completion of the improvements. (Plaintiff's Ex. 4).
2). The bond issued by Commercial Union as a compensated surety was required by the Commission as a condition to its approval of the subdivision to insure completion of the subdivision improvements pursuant to Connecticut General Statutes § 8-25 et seq.
3). As a compensated surety Commercial Union is presumed under the law to understand the risk it assumed. Any doubt about whether a compensated surety is liable on a bond must be resolved in favor of the party which relied on the bond. Handbook on theLaw of Suretyship § 30 (1950); New Haven v. Eastern PavingBrick Co., 78 Conn. 689, 702 (1906); Metropolitan CasualtyCompany of New York v. Billings, 150 Conn. 603, 608 (1963); Townof Brookfield v. Greenridge. Inc., 177 Conn. 527.
4). "When a bond is issued to comply with a statutory condition precedent to any transaction with a public authority . . . the language of the bond . . . is to be interpreted in the light of the statute and with a view to effectuating the legislative intent . . . the bond in this case is for the protection of the public rather than for the benefit of the surety . . ." (Citations omitted) Brookfield v.Greenridge. Inc., supra at page 535.
5). By posting the bond with Southington, Martinez, his heirs, successors and assigns, as principal, and Commercial Union as surety, became contractually obligated to complete the improvements required by the town in its subdivision approval. Nothing in the Connecticut General Statutes § 8-25 specifies what party is eligible or required to post a subdivision bond. The statute merely states that "the commission may accept a bond in an amount with surety and conditions satisfactory to its CT Page 380 securing to the municipality the actual construction, maintenance and installation of such improvements . . ."
6). Reading the bond and application together, Commercial Union cannot reasonably argue that it was unaware of the risk it undertook or that it did not understand that it was dealing with AMI when it had been dealing for several months with Martinez as AMI's president, sole director and sole shareholder in regard to numerous other bonds. (Plaintiff's Ex. 22).
Even if AMI and not Martinez should have been named as sole proper principal under the bond, the court, in that event, would find that Commercial Union was negligent in failing to properly issue the bond. Commercial Union was presented with numerous documents in the course of writing the bond (Plaintiff's Ex. 22) and should have realized that the bond concerned AMI's application. It cannot now assert that it had no duty to issue the bond in accordance with the terms of the application.
Defendant claims that it is not required to pay under the bond because the town's regulations prohibited it from accepting a subdivision bond for completion of work for a period exceeding two years unless there was a provision in the bond for reviewing the penal sum to account for inflation.
Regulation 4-08.2 states as follows:
"No bond shall be accepted for a period exceeding two years unless it contains a provision for reviewing the amount of the bond annually with regard to inflation. In the event the subdivider shall fail to install all improvements within two (2) years from the date of approval, the term of the performance bond may be extended by the Commission upon request of the developer and subject to the receipt of an agreement of such extension by the surety. However, such extension shall not exceed a period of three (3) years."
The court finds that the bond did not expire two years after the approval of the subdivision. The language of the bond clearly stated that its obligation would be void "within two years from the date of recording of said plat" only if the improvements were made within the two-year period, "otherwise, it shall remain in full force and effect." The regulation's purpose is for the protection of the town and is intended to ensure that the amount of the bond is sufficient to cover any costs associated with the CT Page 381 completion of the subdivision improvements. By the terms of the subdivision approval, the bond requirements contained a 20% contingency in the amount of $97,112. This contingency was to hedge against inflation and any cost overruns. (Plaintiff's Ex. 3).
Commercial Union contends that the town's purchase of the property and the resale of its lots is relevant and/or material to the question of whether Commercial Union had an obligation to pay the town for the cost of completing the improvements. The court disagrees. Contrary to defendant's argument, the town was not legally obligated to require a "successor developer" of the subdivision to complete the improvements. There was a contract between the town and Commercial Union, and the town was not required to release and discharge the compensated surety because the town bought the property.
Commercial Union claims that because the court (Arena, J.) granted the defendant's Motion to Strike the original complaint on October 2, 1995, the plaintiff is barred from asserting a claim on the bond by the doctrine of "law of the case." However, such is not the law of the case. The plaintiff filed a substitute complaint, and the defendant failed to file any further motions to strike.
Along with its answer to the substituted complaint, the defendant has raised several special defenses, namely: Failure to state a cause of action, doctrine of laches, doctrine of mitigation of damages, discharge of defendant's obligation by transfer of the property, unclean hands, waiver by acceptance of bond when it knew of should have known that bond principal was someone other than the application for subdivision appraisal, doctrine of estoppel. The court does not believe any of these defenses have merit.
Accordingly, the court finds that the plaintiff has prevailed under counts 1 and 2 of its complaint, and enters judgment in its favor in the amount of $175,000.
Allen, JTR